**CR 15   00264**   LHK   HRL   E-filing

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### *SAN JOSE DIVISION*

THE UNITED STATES OF AMERICA

vs.

JOSEPH SHAYOTA,
ADRIANA SHAYOTA,
JUSTIN SHAYOTA,
WALID JAMIL, aka Wally Jamil,
RAID JAMIL, aka Brian Jamil,
KEVIN ATTIQ,
FADI ATTIQ, aka Fred Attiq
LESLIE ROMAN,
JUAN ROMERO,
MARIO RAMIREZ,
CAMILO RAMIREZ,



Filed
MAY 14 2015
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

VIOLATIONS:  Title 18, United States Code, Section § 2320(a)(4) — Conspiracy to Traffic in Counterfeit Goods;
Title 18, United States Code, Section 371 — Conspiracy to Commit Criminal Copyright Infringement;
Title 18, United States Code, Section 371 – Conspiracy to Introduce Misbranded Food into Interstate Commerce;
Title 18, United State Code, Section 2323(b) — Criminal Forfeiture Allegation.

*A true bill.*

_____
Deputy, Foreperson

Filed in open court this ___13___ day of ___May___
A.D. 201_5_

_____
*United States Magistrate Judge*

Bail. $ ___no bail arrest warrants as to all defendants___

MELINDA HAAG (CABN 132612)
United States Attorney

**SEALED BY ORDER OF THE COURT**

**E-filing**

**Filed MAY 14 2015 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF SAN JOSE CALIFORNIA**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JOSEPH SHAYOTA, <br> ADRIANA SHAYOTA, <br> JUSTIN SHAYOTA, <br> WALID JAMIL, a/k/a Wally Jamil, <br> RAID JAMIL, a/k/a Brian Jamil, <br> KEVIN ATTIQ, <br> FADI ATTIQ, a/k/a Fred Attiq, <br> LESLIE ROMAN, <br> JUAN ROMERO, <br> MARIO RAMIREZ, and <br> CAMILO RAMIREZ, <br><br> Defendants. | CASE NO: **CR 15 00264** <br><br> VIOLATIONS: Title 18, United States Code, Section § 2320(a) — Conspiracy to Traffic in Counterfeit Goods; Title 18, United States Code, Section 371 — Conspiracy to Commit Criminal Copyright Infringement; Title 18, United States Code, Section 371 – Conspiracy to Introduce Misbranded Food into Interstate Commerce; Title 18, United State Code, Section 2323(b) — Criminal Forfeiture Allegation. <br><br> **FILED UNDER SEAL** <br><br> SAN JOSE VENUE |

## INDICTMENT

The Grand Jury charges:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this indictment:

### 5-Hour ENERGY

1. 5-Hour ENERGY was a liquid dietary supplement sold at more than 100,000 retail locations

1

nationwide. Innovation Ventures, LLC, manufactured 5-Hour ENERGY, and was the original registrant and owner of the intellectual property related to 5-Hour ENERGY, including the trademarks and copyright described below. Living Essentials, LLC, distributed 5-Hour ENERGY. International IP Holdings, LLC, was an entity that existed solely to hold title to the 5-Hour ENERGY trademarks and copyright. International IP Holdings, LLC received title to the 5-Hour ENERGY trademarks and copyright from Innovation Ventures, LLC through an assignment/license-back transaction in August 2012. Pursuant to that transaction, Innovation Ventures, LLC retained an exclusive, worldwide license to use the 5-Hour ENERGY trademarks and copyright. Innovation Ventures, LLC, Living Essentials, LLC, and International IP Holdings, LLC, all share common ownership and control, and will be jointly referred to hereafter as "Living Essentials."

2. Living Essentials registered and owned 5-Hour ENERGY trademarks, including the "5-Hour ENERGY" name and various graphical elements of the product's labeling and packaging. The trademarks are registered on the Principal Register of the United States Patent and Trademark Office under the following Registration Numbers:

   a. 3,003,077: The wording "5 HOUR ENERGY" was registered as a trademark on the Supplemental Register on September 27, 2005;

   b. 4,004,225: The wording "5-Hour ENERGY" was registered as a trademark on August 2, 2011;

   c. 4,104,670: The wording "5-Hour ENERGY" (depicted with the "5-Hour" over the word ENERGY) was registered as a trademark on February 28, 2012;

   d. 3,698,044: The "Running Man" symbol was registered as a trademark on October 20, 2009;

   e. 4,116,951: "5-Hour ENERGY," with the wording "5-Hour ENERGY" in black outlined in yellow, below which are the words "EXTRA STRENGTH" in yellow, along with a person in black silhouette, outlined in yellow, shown in an athletic pose adjacent to an uneven landscape, with the sky depicted in transitioning colors from black to red as the sky meets the landscape, was registered on March 27, 2012. This trademark only appears on extra-strength varieties.

   f. 4,120,360: The trademark consisting of the wording "5-Hour ENERGY" in black outlined in yellow along with a person in a black silhouette, outlined in yellow, shown in an athletic pose adjacent to an uneven landscape, with the sky depicted in transitioning colors from black to red as the sky meets the landscape was registered on September 17, 2010. This trademark only appears on regular-strength varieties.

3. Living Essentials registered a copyright with the United States Copyright Office (Reg. No. TX 6-

833-514) which covers the text of the "Caution" label that appears on the 5-Hour ENERGY product label. The copyrighted work read as follows:

> CAUTION: Contains about as much caffeine as a cup of coffee. Limit caffeine products to avoid nervousness, sleeplessness, and occasionally rapid heartbeat. You may experience a Niacin Flush (hot feeling, skin redness) that lasts a few minutes. This is caused by Niacin (Vitamin B3) increasing blood flow near the skin.

4. The 5-Hour ENERGY trademarks and copyrighted material above are displayed on every bottle of 5-Hour ENERGY and display boxes.

5. Living Essentials manufactured all 5-Hour ENERGY at factories in Wabash, Indiana. These factories maintained the raw materials required for production of the liquid product as well as the bottles, caps, sleeves (labels), and display boxes used to package the product.

6. Living Essentials does not provide licenses to any individual or entity to manufacture 5-Hour ENERGY.

<u>The Defendants and their Roles in the Offense</u>

7. Defendant JOSEPH SHAYOTA was a resident of El Cajon, California. He was a Principle of Tradeway, International Inc., d/b/a Baja Exporting LLC ("Baja"), located at 2355 Paseo de Las Americas, Suite A, San Diego, California, and his wife, defendant ADRIANA SHAYOTA, owned the company. In 2009, JOSEPH SHAYOTA approached Living Essentials and volunteered to export Living Essentials' products to Mexico. He subsequently organized the scheme to repackage Spanish-labeled 5-Hour ENERGY with English labels in order to sell them in the United States as well as a scheme to manufacture and sell counterfeit 5-Hour ENERGY in the United States. Defendant ADRIANA SHAYOTA was the bookkeeper for Baja and transferred funds from Baja to Midwest Wholesale Distributors, JT Wholesale, Dan-Dee Company, and other entities to pay for the manufacture of counterfeit 5-Hour ENERGY.

8. Defendant JUSTIN SHAYOTA was a resident of West Bloomfield, Michigan. He was the owner of JT Wholesale, located at 2235 Avenida Costa Este, Suite 200, San Diego, California and was President of Midwest Wholesale Distributors, which was also located at the aforementioned address. He managed the repackaging and relabeling operation at JT Wholesale by hiring day laborers to place labels

on the pre-filled bottles of counterfeit 5-Hour, pack them in display cases, and prepare them for shipment to the Dan-Dee Company.

9. Defendant WALID JAMIL, a/k/a Wally Jamil, was a resident of Troy, Michigan. He owned and operated Midwest Wholesale Distributors ("Midwest"), located at 2235 Avenida Costa Este, Suite 200, San Diego, California. He participated in the scheme to counterfeit 5-Hour ENERGY by hiring MCR Printing and Packaging to design and print cardboard boxes that mirrored the authentic boxes that held 5-Hour ENERGY, and by providing authentic 5-Hour ENERGY bottle sleeves to One Stop Label to be illegally reproduced.

10. Defendant RAID JAMIL, a/k/a Brian Jamil, was a resident of Commerce Township, Michigan. He assisted his brother, defendant WALID JAMIL, by doing various tasks that facilitated the scheme to counterfeit 5-Hour ENERGY. For example, he signed Midwest Wholesale Distributor's purchase order from One Stop Label for the purchase of thousands of "M Berry, M Orange, and M Xtra" counterfeit 5-Hour ENERGY labels.

11. Defendant KEVIN ATTIQ was a resident of Spring Valley, California. He co-owned the Dan-Dee Company, Incorporated ("Dan-Dee") at 3511 Sweetwater Springs Blvd., Spring Valley, California, which was the principal distributor of counterfeit 5-Hour ENERGY. Dan-Dee ordered thousands of bottles of counterfeit 5-Hour ENERGY from Midwest and sold them to various wholesalers.

12. Defendant FADI ATTIQ, a/k/a Fred Attiq, was a resident of El Cajon, California. He co-owned the Dan-Dee Company with his brother, Kevin Attiq, and Nashwan Attiq. He handled the "cash and carry" aspect of the business and the day-to-day in-house accounting. He initiated wire transfers from Dan-Dee's bank account to Midwest's bank account to pay for counterfeit 5-Hour ENERGY.

13. Defendant LESLIE ROMAN was a resident of Rancho Cucamonga, California. He owned Flexopack, located at 6450 Citrine Street, Alto Loma, California, and was a broker for One Stop Label Corporation, located at 1641 South Baker Avenue, Ontario, California. He received authentic 5-Hour ENERGY labels in English from defendant RAID JAMIL and worked with One Stop Label to manufacture millions of counterfeit 5-Hour ENERGY labels.

14. Defendant JUAN ROMERO was a resident of Upland, California, and owned Nutrition Private Label, Incorporated, d/b/a Advanced Nutraceutical Manufacturing LLC, located at 3031 Main

Street, #L, Chula Vista, California. He manufactured the counterfeit 5-Hour ENERGY liquid at his factory in plastic vats. He acquired the blank bottles used to hold the counterfeit 5-Hour ENERGY from a company in Guadalajara, Mexico, called Tecni Envases Plasticos. He also acquired the counterfeit bottle caps imprinted with Living Essentials' trademarked "Running Man" logo from a company in Guadalajara, Mexico, called Tapas y Tapones. After defendant JUAN ROMERO manufactured the counterfeit 5-Hour ENERGY liquid, he placed it in the blank bottles with the trademarked caps and shipped it defendant JUSTIN SHAYOTA.

15. Defendant MARIO RAMIREZ was a resident of Chino Hills, California. He owned MCR Printing and Packaging Corporation ("MCR"), located at 15630 Timberidge Lane, Chino Hills, California. He was hired by defendant WALID JAMIL to design and manufacture display boxes that appeared to be legitimate 5-Hour ENERGY display boxes, and large, corrugated 5-Hour ENERGY cardboard boxes.

16. Defendant CAMILO RAMIREZ was a resident of Tijuana, Mexico. He assisted his father, defendant MARIO RAMIREZ, with designing and printing counterfeit 5-Hour ENERGY display boxes.

COUNT ONE: (18 U.S.C. § 2320(a) - Conspiracy to Traffic in Counterfeit Goods)

17. Paragraphs 1 through 16 are re-alleged and incorporated as if fully set forth here.

18. Beginning in approximately May 2011 and continuing to approximately November 2012, in the Northern District of California and elsewhere, the defendants,

> JOSEPH SHAYOTA,
> ADRIANA SHAYOTA,
> JUSTIN SHAYOTA,
> WALID JAMIL, a/k/a Wally Jamil,
> RAID JAMIL, a/k/a Brian Jamil,
> KEVIN ATTIQ,
> FADI ATTIQ, a/k/a/ Fred Attiq,
> LESLIE ROMAN,
> JUAN ROMERO,
> MARIO RAMIREZ, and
> CAMILO RAMIREZ,

did knowingly and intentionally conspire and agree with one another and other persons known and unknown to the Grand Jury to traffic in counterfeit goods, to wit: by repackaging and counterfeiting and offering for sale counterfeit 5-Hour ENERGY and thereby knowingly using counterfeit marks, to wit:

5

Living Essentials' "5-Hour ENERGY" name and various graphical elements of the product's labeling and packaging under Registration Numbers 3,698,044, 4,004,225, 4,104,670, 4,116,951, and 4,120,360, on and in connection with such goods, each counterfeit mark being identical with and substantially indistinguishable from a mark registered for those goods on the principal register in the United States Patent and Trademark office, and the use thereof was likely to deceive and to cause confusion and mistake.

## Manner and Means of the Conspiracy

19. It was part of the conspiracy that the defendants first engaged in a repackaging phase and then moved into counterfeiting the entire 5-Hour ENERGY product for personal financial gain.

## The Repackaging Phase

20. In approximately late 2009, Living Essentials authorized Baja to distribute 5-Hour ENERGY in Mexico. Living Essentials manufactured the liquid 5-Hour ENERGY product and provided Spanish-language labeling and display boxes to Baja. In addition, Living Essentials provided Baja a complete product package under the agreement that the 5-Hour ENERGY with Spanish-language labeling was only to be distributed by Baja in Mexico. Living Essentials sold the 5-Hour ENERGY with Spanish-language labeling to Baja at a discount of nearly 40% from the price it charged distributors in the United States.

21. The defendants, rather than distributing authentic 5-Hour ENERGY with Spanish-language labeling in Mexico, attempted to divert it to sale in the United States, but, because of the Spanish-language labeling and display boxes, were unable to find a buyer. The defendants then replaced the Spanish-language labeling and display boxes with counterfeit labels and display boxes designed to imitate Living Essentials' packaging in the United States. This process occurred as follows:

   a. the authentic 5-Hour ENERGY Spanish-language labeling was removed by razor blade from the plastic bottle;
   b. the lot code and expiration date was removed from the bottom of each bottle using solvent;
   c. an industrial printer applied false lot numbers and expiration dates to the bottles;
   d. counterfeit 5-Hour ENERGY shrink-wrap labels were hand-applied to each bottle,

     then run through a conveyer into a steam tunnel; and

  e. the diverted 5-Hour ENERGY with the counterfeit labels were assembled into counterfeit display boxes.

22. The defendants repackaged over 350,000 bottles of 5-Hour ENERGY in this way and sold them in the United States at a price that was 15% lower than what Living Essentials charged for authentic United States 5-Hour ENERGY. By December 2011, Baja had sold off its remaining stock of repackaged/relabeled 5-Hour ENERGY.

The Counterfeiting Phase

23. In early 2012, the defendants continued to purchase and possess counterfeit 5-Hour ENERGY labels and display boxes and moved into counterfeiting the entire product.

24. Between December 2011 through October 2012, the defendants ordered more than seven million counterfeit label sleeves and hundreds of thousands of counterfeit display boxes, often switching the lot and expiration codes on the bottles and boxes to parallel the valid codes being used on authentic product.

25. The defendants travelled to Guadalajara, Mexico, and engaged sources for the blank plastic bottles and plastic bottle caps imprinted with the trademarked "Running Man" logo from Tecni Envases Plasticos and Tapas y Tapones, respectively.

26. The defendants purchased equipment, including a steam tunnel machine to place the counterfeit 5-Hour ENERGY labels on the bottles and an inkjet printer to place lot numbers and expiration dates on the bottom of the counterfeit 5-Hour ENERGY bottles.

27. The defendants used code words in purchase orders and invoices for counterfeit 5-Hour ENERGY in order to disguise the true nature of their operation. Defendants WALID JAMIL, JUAN ROMERO, and LESLIE ROMAN referred to the counterfeit 5-Hour ENERGY liquid contents as "michelada," "juice blend," and "spices."

28. From May 2012 to October 2012, Midwest was the principal wholesaler of counterfeit 5-Hour ENERGY and distributed more than four million bottles of counterfeit 5-Hour ENERGY into interstate commerce by selling approximately 508,032 counterfeit 5-Hour ENERGY bottles to Baja and 3,521,232 bottles to Dan-Dee, who further distributed same throughout the United States.

///

Overt Acts

29. In furtherance of the conspiracy and to effect its objects, the defendants committed the following overt acts, among others, in the Northern District of California and elsewhere:

    a.    On or about October 29, 2011, Midwest purchased an inkjet printer from Videojet for $19,312.

    b.    On or about March 13, 2012, Dan-Dee shipped 4,560 bottles of counterfeit 5-Hour ENERGY to Pitco Foods, 567 Cinnabar Street, San Jose, California.

    c.    On or about June 1, 2012, Dan-Dee shipped 90,720 bottles of counterfeit 5-Hour ENERGY to Pitco Foods, 567 Cinnabar Street, San Jose, California.

    d.    On or about June 12, 2012, Dan-Dee shipped 54,432 bottles of counterfeit 5-Hour ENERGY to Pitco Foods, 567 Cinnabar Street, San Jose, California.

    e.    On or about July 12, 2012, Dan-Dee shipped 24,624 bottles of counterfeit 5-Hour ENERGY to Pitco Foods, 567 Cinnabar Street, San Jose, California.

    f.    On or about June 20, 2012, Midwest purchased a 1 Steam Tunnel from One-Stop Labels for $34,000.

    g.    On or about July 17, 2012, Dan-Dee shipped 108,864 bottles of counterfeit 5-Hour ENERGY to Pitco Foods, 567 Cinnabar Street, San Jose, California.

    h.    On or about October 16, 2012, counterfeit Berry 5-Hour ENERGY originating from the defendants, was offered for sale at Pitco Foods, 737 Kennedy Street, Oakland, California.

    i.    On or about October 11, 2012, counterfeit Berry and Extra-Berry 5-Hour ENERGY originating from the defendants, was offered for sale at Pitco Foods at 385 Valley Drive, Brisbane, California.

    j.    On or about October 29, 2012, 140,803 bottles of counterfeit 5-Hour ENERGY, originating from the defendants, was offered for sale at Pitco Foods at their San Jose, Oakland, Brisbane, and West Sacramento locations.

All in violation of Title 18, United States Code, Sections 2320(a).

///

///

COUNT TWO: (18 U.S.C. § 371 — Conspiracy to Commit Criminal Copyright Infringement)

30. The factual allegations in paragraphs 1 through 29 are re-alleged and incorporated as if fully set forth here.

31. Beginning in approximately May 2011 and continuing to approximately November 2012, in the Northern District of California and elsewhere, the defendants,

> JOSEPH SHAYOTA,
> ADRIANA SHAYOTA,
> JUSTIN SHAYOTA,
> WALID JAMIL, a/k/a Wally Jamil,
> RAID JAMIL, a/k/a Brian Jamil,
> KEVIN ATTIQ,
> FADI ATTIQ, a/k/a Fred Attiq,
> LESLIE ROMAN,
> JUAN ROMERO,
> MARIO RAMIREZ, and
> CAMILO RAMIREZ,

did knowingly conspire and agree with one another and other persons known and unknown to the grand jury to commit Criminal Copyright Infringement, by willfully infringing the copyright of a copyrighted work, that is, counterfeit 5-Hour ENERGY bottles containing Living Essentials' copyrighted "CAUTION" wording on the product label which was registered with the United States Copyright Office under Registration No. TX 6-833-514, for purposes of commercial advantage and private financial gain, by the reproduction and distribution, during a 180-day period, of at least ten copies of at least one or more copyrighted works, which had a total retail value of more than $2,500, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Section 2319(b)(1).

### Manner and Means of the Conspiracy

32. The objects of the conspiracy were carried out, in part, as alleged in Paragraphs 19 through 29 above.

### Overt Acts

33. In furtherance of the conspiracy and to effect its objects, in the Northern District of California and elsewhere, the defendants committed, among others, each of the overt acts alleged in Paragraph 29, including its subparagraphs.

All in violation of Title 18, United States Code, Section 371.

COUNT THREE: (18 U.S.C. § 371 – Conspiracy to Introduce Misbranded Food into Interstate Commerce)

34. The factual allegations in paragraphs 1 through 29 are re-alleged and incorporated as if fully set forth here.

35. Beginning in approximately May 2011 and continuing to approximately November 2012, in the Northern District of California and elsewhere, the defendants,

>JOSEPH SHAYOTA,
>ADRIANA SHAYOTA,
>JUSTIN SHAYOTA,
>WALID JAMIL, a/k/a Wally Jamil,
>RAID JAMIL, a/k/a Brian Jamil,
>KEVIN ATTIQ,
>FADI ATTIQ, a/k/a Fred Attiq,
>LESLIE ROMAN,
>JUAN ROMERO,
>MARIO RAMIREZ, and
>CAMILO RAMIREZ,

did knowingly conspire and agree with one another and other persons known and unknown to the grand jury to commit Introduction of Misbranded Food into Interstate Commerce, that is, with the intent to defraud and mislead, the defendants introduced, delivered for introduction, and caused the introduction and delivery for introduction, into interstate commerce, any food that is adulterated or misbranded, namely counterfeit 5-Hour ENERGY. This food was misbranded as defined in 21 U.S.C. § 343(a) in that its labeling was false and misleading, that is, the labeling contained false lot numbers, expiration dates, and ingredients lists, in violation of Title 21, United States Code, Sections 331(a) & 333(a)(2).

### Manner and Means of the Conspiracy

36. The objects of the conspiracy were carried out, in part, as alleged in Paragraphs 19 through 29 above.

### Overt Acts

37. In furtherance of the conspiracy and to effect its objects, in the Northern District of California and elsewhere, the defendants committed, among others, each of the overt acts alleged in Paragraph 29, including its subparagraphs.

All in violation of Title 18, United States Code, Section 371.

CRIMINAL FORFEITURE ALLEGATION: (18 U.S.C. § 2323(b))

38. The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 2323(b).

39. Upon conviction of any of the offenses set forth in Counts One and Two of this Indictment the defendants,

>    JOSEPH SHAYOTA,
>    ADRIANA SHAYOTA,
>    JUSTIN SHAYOTA,
>    WALID JAMIL, a/k/a Wally Jamil,
>    RAID JAMIL, a/k/a Brian Jamil,
>    KEVIN ATTIQ,
>    FADI ATTIQ, a/k/a Fred Attiq,
>    LESLIE ROMAN,
>    JUAN ROMERO,
>    MARIO RAMIREZ, and
>    CAMILO RAMIREZ,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 2323(b), all articles, the making and trafficking of which are prohibited under Title 18, United States Code, Sections 2319 and 2320; all property used, and intended to be used, in any manner and part to commit or facilitate the commission of an offense under Sections 2319 and 2320; and all property constituting and derived from any proceeds obtained directly and indirectly as a result of the commission of an offense under Sections 2319 and 2320.

40. In the event that the property subject to forfeiture:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

any and all interest the defendant has in other property shall be vested in the United States and forfeited to the United States pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title

1  18, United States Code, Section 982(b)(1).

2  All pursuant to Title 18, United States Code, Section 2323(b) and Federal Rule of Criminal
3  Procedure 32.2.

4

5  DATED: 5/13/15                                    A TRUE BILL.

6

7                                                   _____
                                                    FOREPERSON
8  MELINDA HAAG                                     Deputy
   United States Attorney
9  _____

10 MATTHEW A. PARRELLA
   Chief, Computer Hacking/Intellectual Property Unit
11

12 (Approved as to form: /MAP/ /SPR/   )
13                AUSAs PARRELLA/KNIGHT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28