UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br>    v.<br>JOSEPH SHAYOTA, et al.,<br>        Defendants. | Case No. 15-CR-00264-LHK<br>**ORDER DENYING MOTION TO CHANGE VENUE**<br>Re: Dkt. Nos. 63, 64, 65, 66, 67 |

On November 18, 2015, Defendants Mario Ramirez and Camilo Ramirez (collectively, the "Ramirezes") filed a motion to change venue.  ECF No. 63 ("Mot.").  The Government filed a response on December 7, 2015, and the Ramirezes filed a reply on December 14, 2015.  ECF No. 70 ("Opp'n"); ECF No. 71 ("Reply").

The Ramirezes' motion seeks to transfer the instant action from this Court to the U.S. District Court for the Southern District of California.  *See* Mot. at 24.  Defendants Leslie Roman, Joseph Shayota, Adriana Shayota, Juan Romero, Kevin Attiq, and Fadi Attiq have moved to join the Ramirezes' motion.  ECF Nos. 64, 65, 66 & 67.  The remaining Defendants—Justin Shayota, Walid Jamil, and Raid Jamil—have not moved to join the Ramirezes' motion.  The Court hereby GRANTS the various motions to join and, for purposes of this Order, shall refer to Mario

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Ramirez, Camilo Ramirez, and the six Defendants who have joined the Ramirezes' motion as the

2    "moving Defendants." The Court shall refer to the remaining Defendants as the "nonmoving

3    Defendants."

4       The Court finds the moving Defendants' motion to change venue appropriate for resolution

5    without a hearing and thus VACATES the hearing set for December 28, 2015, at 10:00 a.m.  A

6    status conference, currently scheduled for December 28, 2015, at 10:00 a.m., remains as set.  For

7    the reasons that follow, the Court DENIES the moving Defendants' motion to change venue.

8    **I.  LEGAL STANDARD**

9       Federal Rule of Criminal Procedure 21(b) provides that, "[u]pon the defendant's motion,

10    the court may transfer the proceeding, or one or more counts, against that defendant to another

11    district for the convenience of the parties, any victim, and the witnesses, and in the interest of

12    justice." Fed. R. Crim. P. 21(b).  "[T]he Defendant bears the burden of showing why transfer is

13    warranted." *United States v. Napoli*, 2011 WL 1303571, *1 (N.D. Cal. Apr. 5, 2011).  "Where, as

14    here, a defendant is one of many defendants being tried together, the moving defendant's

15    convenience must outweigh the presumption that properly joined defendants ought to be tried

16    together." *Id.* (citing *Zafiro v. United States*, 506 U.S. 534, 537 (1993)).  "A district court has

17    broad discretion in ruling on a motion for change of venue," *United States v. Sherwood*, 98 F.3d

18    402, 410 (9th Cir. 1996), and "[o]nly in rare instances have appellate courts overridden a trial

19    court's decision not to transfer."  *United States v. Ward*, 878 F.2d 387, *1 (9th Cir. 1989) (Table).

20       In *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964), the U.S.

21    Supreme Court provided the following list of factors that a district court might consider when

22    reviewing a Rule 21(b) motion:

23         (1) location of [the] ... defendant; (2) location of possible witnesses; (3) location
         of events likely to be in issue; (4) location of documents and records likely to be

24         involved; (5) disruption of defendant's business unless the case is transferred; (6)
         expense to the parties; (7) location of counsel; (8) relative accessibility of [the]

25         place of trial; (9) docket condition of each district . . . involved; and (10) any
         other special elements which might affect the transfer.

26   

27    *Id.* at 243–44; *see also Napoli*, 2011 WL 1303571, at *1–*2 (citing and applying *Platt* factors);

28   

Case No. 15-CR-00264-LHK
ORDER DENYING MOTION TO CHANGE VENUE

1   *United States v. Fritts*, 2005 WL 3299834, *2–*5 (N.D. Cal. Dec. 6, 2005) (same).  "No one of

2   these considerations is dispositive, and it remains for the court to try to strike a balance and

3   determine which factors are of greatest importance."  *United States v. Maldonado-Rivera*, 922

4   F.2d 934, 966 (2d Cir. 1990) (internal quotation marks and alteration omitted).

5   **II.**     **DISCUSSION**

6     **1. Location of Defendants**

7       Six of the moving Defendants reside in the Southern District of California and two of the

8   moving Defendants reside in the Central District of California.  ECF No. 64 at 2.[1]  Two of the

9   nonmoving Defendants reside in Michigan and one of the nonmoving Defendants resides in the

10   Southern District of California.  This factor thus weighs in favor of transfer.  *Id.*  In consideration

11   of this factor, the Court has, pursuant to 18 U.S.C. § 4285, previously ordered the Government to

12   pay travel costs for one of the moving Defendants.  *See* ECF No. 23 (directing Government to pay

13   July 9, 2015 travel costs for Leslie Roman); 18 U.S.C. § 4285 ("Any judge or magistrate judge of

14   the United States . . . may . . . direct the United States marshal to arrange for that person's means

15   of noncustodial transportation or furnish the fare for such transportation to the place where his

16   appearance is required.").  In addition, on November 4, 2015, the Court waived all of the

17   Defendants' appearances at the December 28, 2015 Court proceeding.  ECF No. 73.  Moreover,

18   the Court will allow all counsel to appear at the December 28, 2015 Court proceeding by

19   telephone.  *Id.*  Finally, on December 28, 2015, the Court intends to discuss with counsel

20   arrangements to mitigate the future burden imposed upon both the moving Defendants and their

21   counsel.

22     **2. Location of Witnesses**

23       The moving Defendants intend to call a number of witnesses who live in the Southern

24   District of California.  *See* Opp'n at 7–8 (summarizing witness lists).[2] The Government, on the

25

26   [1] Juan Romero, one of the moving Defendants who resides in the Central District of California, "is currently undergoing medical treatment[] in . . . Mexico," and thus currently lives in Mexico City.

27   ECF No. 67 at 2.
  [2] Relatedly, the moving Defendants intend to move for a jury view of a factory located in Mexico.

28

Case No. 15-CR-00264-LHK
ORDER DENYING MOTION TO CHANGE VENUE

1    other hand, intends to call "[s]everal special agents from the Federal Bureau of Investigation . . .

2    [and] from the Food and Drug Administration, all of whom reside in the Northern District of

3    California."  ECF No. 70-1 at 2.  The Government also anticipates calling several employees of

4    Pittsburg Wholesale Grocers (also referred to in Court documents as "Pitco" or "Pitco Foods"),

5    which is headquartered in San Jose.  *Id.*  Indeed, "the majority [of the Government's witnesses]

6    will not be from the Southern District of California."  Opp'n at 7.  Under these circumstances, the

7    Court concludes that the location of potential witnesses neither weighs in favor of nor against

8    transfer.  *See Napoli*, 2011 WL 1303571, *1 (concluding that location of witnesses was neutral

9    where most of the defendant's witnesses were in Philadelphia but most of the Government's

10   witnesses were in San Francisco.).

11         In reaching this conclusion, the Court takes note of two considerations.  First, the moving

12   Defendants have not specified to what their witnesses will testify and how these witnesses are

13   essential to the resolution of this case.  The Ninth Circuit addressed a similar situation in *United*

14   *States v. Testa*, 548 F.2d 847, 857 (9th Cir. 1977), where the defendant also "did not make any

15   attempt to subpoena witnesses, nor did [the defendant] indicate specifically who the witnesses

16   were to be or the nature of their expected testimony."  Under such circumstances, the Ninth Circuit

17   determined that the defendant had failed to demonstrate that transfer was warranted.

18         Second, and relatedly, if the moving Defendants are able to demonstrate that some of their

19   witnesses are essential to the disposition of this case and that moving Defendants are unable to pay

20   the witness's fees, the moving Defendants may request that the Government bear witness costs

21   pursuant to Federal Rule of Criminal Procedure 17(b).  *See* Fed. R. Crim. P. 17(b) ("Upon a

22   defendant's ex parte application, the court must order that a subpoena be issued for a named

23   witness if the defendant shows an inability to pay the witness's fees and the necessity of the

24   witness's presence for an adequate defense.  If the court orders a subpoena to be issued, the

25   _____

26   Mot. at 14.  The Court is not persuaded that this argument supports transfer.  Even if the factory
     were relevant to the disposition of this case—a point that the Government contests, Opp'n at 9—
27   the moving Defendants have not explained why the moving Defendants could not employ a more
     cost-effective alternative, such as showing the jury photographs or a video of the factory.

28
                                                    4

United States District Court
Northern District of California

process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas.").  This provision can thus ease the financial burden upon the moving Defendants, if necessary, and assist them in presenting an effective defense.

### 3.  Location of Events

The Government concedes that "the entities and events involved in the alleged criminal activity originated in the Southern District of California."  Opp'n at 8.  However, moving Defendants state that approximately 10% of the alleged counterfeit products at issue were shipped to or offered for sale in the Northern District of California.  Mot. at 15.  For example, the Indictment alleges that approximately 283,200 bottles of counterfeit 5-Hour ENERGY were shipped to San Jose, California between March and July 2012.  ECF No. 1 at 8.  The Indictment alleges that eight overt acts of the conspiracy took place in the Northern District of California.  *Id.* "[V]enue is appropriate in any district where an overt act committed in the course of the conspiracy occurred."  *United States v. Schoor*, 597 F.2d 1303, 1308 (9th Cir. 1979).  Thus, the Court finds that venue in the Northern District of California is proper, but that the location of events nonetheless tips slightly in favor of transfer.

### 4.  Location of Documents

The parties agree that all relevant documents and records are either already in the Northern District of California or are electronically accessible. Mot. at 15; Opp'n at 9.  Accordingly, this factor weighs against transfer.

### 5.  Disruption to Defendants' Businesses

All of the moving Defendants operate businesses in either the Southern or Central District of California.  Requiring the moving Defendants to attend hearings and trial before this Court would thus disrupt operations at these businesses.  However, as the district court observed in *Napoli*, "it is not obvious why [these] businesses cannot be looked after . . . by others and/or why [the moving Defendants] would not be able to oversee them remotely." 2011 WL 1303571, *2. Moreover, the Court intends to discuss telephonic appearance options during the December 28, 2015 status conference.  Thus, the Court finds that although the disruption to Defendants'

United States District Court
Northern District of California

1  businesses weighs in favor of transfer, the impact of any such disruption could be mitigated.

2  **6.  Expense to the Parties**

3       Granting the moving Defendants' motion to transfer would result in at least two separate

4  trials: one trial before this Court for the nonmoving Defendants, and another trial before the

5  Southern District of California for the moving Defendants.  This would represent a significant

6  expense to the witnesses, the parties, and the federal judiciary, as it would require fact witnesses to

7  testify at a minimum of two trials, dramatically increase the Government's litigation costs, and

8  require two federal courts to spend time and resources addressing the same alleged conspiracy.

9       The Ninth Circuit has discouraged transfer in cases where transfer would result in

10  duplicative trials, and other circuit courts are in accord.  *See Testa*, 548 F.2d at 857; *see also*

11  *United States v. Morrison*, 946 F.2d 484, 489 (7th Cir. 1991) (upholding decision to deny motion

12  to transfer "[b]ecause . . . to have transferred [defendant's] trial—essentially granting him a

13  severance—would have given rise to a multiplication of litigation resulting in great inconvenience

14  to the witnesses involved as well as considerable expense to the government.") (internal quotation

15  marks omitted).

16       Indeed, the facts in *Testa* are analogous to the facts of the instant case.  In *Testa*, defendant

17  Edward Epstein ("Epstein") was allegedly involved in a heroin conspiracy that operated in Hawaii,

18  California, and Nevada.  946 F.2d at 857.  Epstein, however, was only alleged to have committed

19  acts in furtherance of the conspiracy while in California.  Epstein thus sought transfer of venue

20  from Hawaii to California.  *Id.*  Epstein's co-defendant, however, did not join Epstein's motion.

21  The district court denied Epstein's motion to transfer, which the Ninth Circuit upheld on appeal.

22  The fact that "transfer of Epstein's trial would have severed the two defendants' trials" and thus

23  would have resulted in great expense to the parties was key to both the district court and the Ninth

24  Circuit's decisions.  *Id.*

25       Consonant with *Testa*, several district courts within the Ninth Circuit have denied motions

26  to transfer in similar situations.  In *United States v. Napoli*, for instance, the defendant was

27  allegedly involved in three separate but related conspiracies, with multiple co-defendants in each

28

Case No. 15-CR-00264-LHK
ORDER DENYING MOTION TO CHANGE VENUE

conspiracy.  Although the district court found that several *Platt* factors weighed in favor of transfer, the district court ultimately denied the defendant's motion to transfer.  In reaching this decision, the district court noted that "the best reason[] for denying transfer concern the significant efficiency gained by having one trial (or even several) in one location rather than two."  2011 WL 1303571, *2; *see also id.* n.3 ("[T]he burden and expense on the government of having all those trials here is less than having three trials here and a fourth in [a different location].").  This same reasoning applies to the instant case: it would be significantly more efficient to hold all trials in the Northern District of California than to hold separate trials in the Northern and Southern Districts of California.

Likewise, in *United States v. Acuna*, 2008 WL 2812306 (D. Haw. July 21, 2008), Defendant Benjamin Acuna ("Acuna") was allegedly involved in a methamphetamine conspiracy, along with several co-defendants from Nevada and from Hawaii.  Acuna moved to transfer the action from Hawaii to Nevada because all defendants residing in Hawaii had entered guilty pleas. *Id.* at *1.  As a result, the only remaining defendants in the case resided in Nevada.  The district court denied Acuna's motion. *Id.* at *3.  In reaching this conclusion, the district court noted that the investigation team was located in Hawaii, that the prosecutors were located in Hawaii, and that all pre-trial proceedings had taken place in Hawaii. *Id.*  Although transferring the action in *Acuna* would not have resulted in two separate trials, transfer would—as it would here—nonetheless require a second federal court to familiarize itself with the case's many nuances and complexities.

As the moving Defendants point out, some district courts have granted motions to transfer even where transfer would result in severance. *See* Reply at 8–14.  However, neither of the cases upon which the moving Defendants primarily rely—*United States v. Jessup*, 38 F.R.D. 42 (M.D. Tenn. 1965), and *United States v. Clark*, 360 F. Supp. 936 (S.D.N.Y. 1973)—are Ninth Circuit cases.  Moreover, both *Jessup* and *Clark* are distinguishable.  In both cases, for instance, the district court noted that transfer would facilitate easier access to records, documents, and witnesses. *See, e.g.*, *Jessup*, 38 F.R.D. at 45 ("[D]efendants' personal records are all located in the Southern District of Mississippi, as are certain immovable exhibits."); *Clark*, 360 F. Supp. at 944

7

Case No. 15-CR-00264-LHK
ORDER DENYING MOTION TO CHANGE VENUE

United States District Court
Northern District of California

1    ("It is obviously difficult for a New York lawyer to handle this work effectively with the

2    documents in New York and most of the witnesses 1500 miles away."). These concerns are less

3    important in the instant case. As an initial point, *Jessup* and *Clark* were decided in 1965 and

4    1973, respectively. Since that time, the advent of the personal computer, the Internet, and

5    electronic discovery have allowed parties to bridge previous geographic barriers. Moreover, the

6    relevant documents in this case have already been transported to the Northern District of

7    California, and the Government shall, pursuant to Federal Rule of Criminal Procedure 17(b) and

8    18 U.S.C. § 4285, pay for necessary witness and defendant expenses.

9          In addition to the specific differences between the instant case and the cases relied upon by

10   the moving Defendants, the Court notes that the instant case presents numerous complex factual

11   issues, as reflected by the large quantity of documents that have already been produced in

12   discovery. *See* ECF No. 54 at 3. Having a minimum of two trials in two separate federal courts

13   would therefore impose a particularly heavy burden on fact witnesses who would have to testify in

14   two separate jurisdictions. In addition, multiple trials would impose a significant financial and

15   logistical burden upon the Government. Thus, consonant with the reasoning in *Testa*, *Napoli*, and

16   *Acuna*, the Court finds that the expense to the parties weighs strongly against transfer.

17   **7. Location of Counsel**

18         Six of the eight moving Defendants are represented by counsel from the Southern District

19   of California. Opp'n at 11. As noted above, the Court intends to discuss at the December 28,

20   2015 status conference possible arrangements to mitigate the burden imposed on counsel for these

21   Defendants. The other moving Defendants—Leslie Roman and Juan Romero—were appointed

22   counsel from the Northern District of California. *Id.* The three nonmoving Defendants are

23   represented by counsel from the Northern District of California. Finally, the prosecutors in this

24   action are also from the Northern District of California.

25         If this action were transferred, new counsel would need to be appointed for Leslie Roman

26   and Juan Romero. New counsel would need to familiarize themselves with the voluminous

27   discovery and complexities of this case, which could delay resolution of this action. Thus,

28

8

although transfer could make proceedings slightly more convenient for some of the moving Defendants, transfer would also impose a significant burden upon the other moving Defendants and upon the Government.  In light of these circumstances, the Court finds that the location of counsel does not favor transfer.

**8.  Relative Accessibility**

As the moving Defendants acknowledge, both San Jose and San Diego are easily accessible.  Mot. at 17.  In both cities, the federal courthouses are within fifteen miles of a major airport.  Accordingly, this factor does not favor transfer.

**9.  Docket Conditions**

From June 30, 2014 to June 30, 2015, there were fewer criminal filings in the Northern District of California as compared to the Southern District of California.  Opp'n at 11.  However, the average time from filing to disposition in the Northern District was 13.7 months, while the average time from filing to disposition in the Southern District was 4.6 months.  *Id.* at 11–12.  The Government contends that the Southern District's criminal immigration caseload helps explain this seeming discrepancy: such cases increase the volume of the Southern District's criminal docket, but are relatively quicker to resolve than non-immigration cases.  *Id.* at 12.

The Court will accommodate the moving Defendants' desire for a speedy trial and thus the December 28, 2015 Court proceeding will be a trial setting.  This factor therefore does not weigh in favor of transfer.

**10. Special Elements**

With respect to the special elements factor, the moving Defendants assert that some of their family members may have to move to San Jose in order to provide support to the moving Defendants during trial.  The Court is not persuaded that this consideration represents a special element under *Platt*.  Indeed, it appears that every federal court to have previously addressed this issue has analyzed it under the location of defendant factor.  *See, e.g.*, *United States v. Hanley*, 1995 WL 60019, *2 (S.D.N.Y. Feb. 10, 1995); *United States v. Russell*, 582 F. Supp. 660, 662 (S.D.N.Y. 1984).  The Court has already determined that the location of defendants factor weighs

9

Case No. 15-CR-00264-LHK
ORDER DENYING MOTION TO CHANGE VENUE

United States District Court
Northern District of California

1  in favor of transfer, and the Court will discuss at the December 28, 2015 status conference

2  possible arrangements to mitigate the impact of the moving Defendants' location.

3        In sum, several of the *Platt* factors weigh in favor of transfer, several weigh against

4  transfer, and several are neutral.  Because "[n]o one of these [factors] is dispositive," it "remains

5  for the [district] court to try to strike a balance and determine which factors are of greatest

6  importance."  *Maldonado-Rivera*, 922 F.2d at 966 (internal quotation marks and alterations

7  omitted).  In consideration of this point, the Court finds that the moving Defendants have not

8  sufficiently demonstrated that transfer is warranted.  As in *Napoli*, the Court finds that the "best

9  reason[] for denying transfer concern the significant efficiency gained by having one trial (or even

10  several) in one location rather than two."  2011 WL 1303571, *2.  This case presents complex

11  factual issues which the Government appears to have investigated for some time.  Both sides

12  anticipate calling a number of fact witnesses.  If transfer were granted, several of these witnesses

13  would need to testify in two different jurisdictions.  Moreover, requiring the Government to

14  conduct trials before two separate federal courts would be financially burdensome and logistically

15  cumbersome, and would likely delay the resolution of this action.  Thus, although some

16  circumstances weigh in favor of transfer, these circumstances do not outweigh the significant

17  burden that would result in the prosecution of the same alleged criminal conspiracy before two

18  different federal courts.

19  **III.    CONCLUSION**

20        For the foregoing reasons, the moving Defendants' motion to change venue is DENIED.

21  **IT IS SO ORDERED.**

22  Dated:  December 23, 2015

23  _____

24  LUCY H. KOH
   United States District Judge

25

26

27

28

Case No. 15-CR-00264-LHK
ORDER DENYING MOTION TO CHANGE VENUE