UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSEPH SHAYOTA, et al.,<br><br>    Defendants. | Case No. 15-CR-00264-LHK<br><br>**ORDER REGARDING PRETRIAL MOTIONS**<br><br>Re: Dkt. Nos.  111, 113, 114, 116, 117, 119, 120, 121 |

On March 23, 2016, the defendants in this action filed pre-trial motions. *See* ECF Nos. 111, 112, 113, 114, 115, 116, 117, 119, 120, 121.  The Government filed responses.  ECF Nos. 124, 125, 126, 129, 130, 132, 133.  The defendants filed replies.  ECF Nos. 134, 135, 137, 138, 139, 140.

This order addresses the motions contained in ECF Nos. 113, 114, 116, 119, 120, and 121 and portions of the motions contained in ECF Nos. 111 and 117.  The Court will issue a separate order on the severance motions in ECF Nos. 111 and 117.  The Court will address the motions contained in ECF Nos. 112 and 115 at a later time.

The Court has considered the submissions of the parties, the record in this case, and the relevant law and finds these motions suitable for disposition without oral argument.  The Court

accordingly VACATES the May 13, 2016 hearing on motions ruled upon below, except where otherwise noted.

**I.    BACKGROUND**

A three-count indictment was filed on May 14, 2015 against defendants Joseph Shayota, Adriana Shayota, Justin Shayota, Walid Jamil, Raid Jamil, Kevin Attiq, Fadi Attiq, Leslie Roman, Juan Romero, Mario Ramirez, and Camilo Ramirez (collectively, "Defendants"). ECF No. 1 ("Indictment"). All Defendants are named in each of the three counts of the Indictment, which relates generally to alleged conspiracies to manufacture and distribute counterfeit bottles of a liquid dietary supplement known as "5-Hour ENERGY." *Id.* ¶ 1. The Indictment alleges that a group of commonly owned and controlled companies, referred to collectively as "Living Essentials," owns the trademarks and copyrights related to 5-Hour ENERGY. *Id.* Count One, brought under 18 U.S.C. § 2320(a), alleges that Defendants conspired to traffic in counterfeit goods. *Id.* ¶¶ 17–18. Count Two, brought under 18 U.S.C. § 371, alleges that Defendants conspired to commit criminal copyright infringement in violation of 17 U.S.C. § 506(a)(1)(A) (offense) and 18 U.S.C. § 2319(b)(1) (penalty). *Id.* ¶¶ 30–31. Count Three, also brought under 18 U.S.C. § 371, alleges that Defendants conspired to introduce misbranded food into interstate commerce in violation of 21 U.S.C. §§ 331(a) (offense), 333(a)(2) (penalty), and 343(a) (defining "misbranded"). *Id.* ¶¶ 34–35. In addition, the Indictment includes a criminal forfeiture allegation pursuant to 18 U.S.C. § 2323(b). *Id.* ¶¶ 38–40.

In accordance with the schedule set by the Court, *see* ECF No. 77, individual defendants filed the following pretrial motions on March 23, 2016:

| ECF No. | Nature of Motion | Filed By | Defendants Seeking to Join |
|---|---|---|---|
| 111 | Motion to Consolidate Conspiracies into Count One | Kevin Attiq & Fadi Attiq | Adriana Shayota (ECF No. 113), Joseph Shayota (ECF No. 117), Walid Jamil (ECF No. 120), Raid Jamil (ECF No. 121) |
| 111 | Motion for Severance | Kevin Attiq & Fadi Attiq | Walid Jamil (ECF No. 120) |
| 111 | Motion for Bill of Particulars | Kevin Attiq & Fadi Attiq | Adriana Shayota (ECF No. 113), Raid Jamil (ECF No. 121) |
| 112 | Motion to Suppress | Mario Ramirez | Walid Jamil (ECF No. 120) |

2

| ECF No. | Nature of Motion | Filed By | Defendants Seeking to Join |
|---|---|---|---|
| | | & Camilo Ramirez | |
| 113 | Motion to Set Government Notice Deadline for Any Co-Defendant Statements and Proposed Redactions the Government Will Introduce at Trial | Adriana Shayota | Walid Jamil (ECF No. 120), Raid Jamil (ECF No. 121) |
| 113 | Motion to Join Motions of Codefendants | Adriana Shayota | |
| 114 | Motion to Dismiss Based on the Compelled Destruction of Evidence | Mario Ramirez & Camilo Ramirez | |
| 115 | Motion to Suppress | Mario Ramirez & Camilo Ramirez | |
| 116 | Motion for Discovery | Mario Ramirez & Camilo Ramirez | Kevin Attiq & Fadi Attiq (ECF No. 119) |
| 117 | Motion for Severance | Joseph Shayota | Walid Jamil (ECF No. 120) |
| 117 | Motion to Join Motions of Codefendants | Joseph Shayota | |
| 119 | Motion to Join Motions of Codefendants | Kevin Attiq & Fadi Attiq | |
| 120 | Motion to Join Motions of Codefendants | Walid Jamil | |
| 121 | Motion to Join Motions of Codefendants | Raid Jamil | |

## II.     DISCUSSION

The Court discusses each of Defendants' motions below. Unless otherwise indicated, the term "moving Defendants" in each section refers to the group of individuals that filed or joined the particular motion at issue.

**A. Motions to Join Motions of Co-Defendants (ECF Nos. 113, 117, 119, 120, 121)**

Defendants Joseph Shayota, Adriana Shayota, Walid Jamil, Raid Jamil, Kevin Attiq, and Fadi Attiq move for an order permitting them to join particular motions filed by co-defendants as indicated in the fourth column of the table above. The Court GRANTS the motions to join.

**B. Motion to Consolidate Conspiracies into Count One (ECF No. 111)**

   **1. Background and Legal Standard**

Defendants Kevin Attiq and Fadi Attiq, joined by defendants Adriana Shayota, Joseph Shayota, Walid Jamil, and Raid Jamil, move pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) to consolidate the conspiracies charged in Counts Two and Three with Count One. ECF No. 111 at 5–9.  The Government opposes the motion.  ECF No. 125 at 1–7.

Specifically, the moving Defendants argue that Counts Two and Three are multiplicitous of Count One because "[i]n essence, Count 1 charges the same agreements denominated in Counts 2 and 3, albeit without mentioning the specific statutes appended to those two counts.  The charges are not legally distinct because the factual proof of a conspiracy in Count 1 and what it alleges as criminal would suffice to prove Counts 2 and 3." ECF No. 111 at 9.

"An indictment is multiplicitous when it charges multiple counts for a single offense, producing two penalties for one crime and thus raising double jeopardy questions." *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005).  In this case, Count One alleges a violation of a specific conspiracy statute, 18 U.S.C. § 2320(a), while Counts Two and Three allege a violation of the general conspiracy statute—18 U.S.C. § 371.  Under Ninth Circuit law, "a defendant may be tried and convicted under both the general conspiracy statute and a specific conspiracy statute when the substantive offense that is charged as the object of the § 371 conspiracy and the substantive offense that is the object of the other charged conspiracy are different." *United States v. Arlt*, 252 F.3d 1032, 1035 (9th Cir. 2001) (en banc).  To determine whether the substantive offense that is the object of the conspiracy charged in Count One is different than the offenses underlying Counts Two and Three—*i.e.*, is not multiplicitous—in such a situation, the Court "appl[ies] the *Blockburger* test to the two conspiracy counts to determine whether each provision requires proof of an additional fact which the other does not." *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)) (quotation marks omitted).

**2. Counts Two and Three Are Not Multiplicitous of Count One**

Here, the *Blockburger* test is satisfied, because the statute underlying the conspiracy charged in Count One requires proof of an element which the statutes underlying Counts Two and

4

Three do not, and vice versa. Specifically, Count One alleges a conspiracy to traffic in counterfeit goods in violation of 18 U.S.C. § 2320(a). To convict the moving defendants under Count One, a jury must find, among other things, an agreement to traffic in goods using "a counterfeit mark," defined in relevant part as "a spurious mark . . . that is identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office and in use . . . ." 18 U.S.C. § 2320(f)(1)(A). A statutory element of the charged offense is thus use of a registered trademark.

In contrast, the offense charged under the general conspiracy statute in Count Two, conspiracy to commit criminal copyright infringement, does not require proof of the use of a registered trademark. Rather, the jury must find an agreement to willfully infringe a *copyright* for commercial advantage or private financial gain. 17 U.S.C. § 506(a)(1)(A). Count One does not require infringement of a copyright.

Similarly, with regard to the conspiracy charged in Count Three, a jury must find an agreement for the introduction "into interstate commerce of any food . . . that is adulterated or misbranded," 21 U.S.C. § 331(a), where "misbranded" means, in relevant part, that its "labeling is false or misleading." 21 U.S.C. § 343(a). Again, the underlying offense that is the object of the conspiracy charged in Count Three does not require, unlike Count One, proof of a registered trademark.[1] Conversely, proof concerning a "food . . . that is adulterated or misbranded" is not required by Count One. Thus, because Count One requires proof of an element that each of Counts Two and Three does not, and vice versa, Counts Two and Three are not multiplicitous of Count One. *Kimbrew*, 406 F.3d at 1151.

Although the moving Defendants argue that a single conspiracy is at issue because the same overt acts and actions alleged in Count One are alleged in support of Counts Two and Three, ECF No. 111 at 7, 8–9, that fact does not alter the Court's analysis. "The *Blockburger* test focuses

---

[1] Although the inquiry focuses on the statutory elements, the Court notes that Count Three of the Indictment does not rely on a trademark violation to establish misbranding. Rather, the Indictment alleges that the bottles of liquid dietary supplement at issue contained false lot numbers, expiration dates, and ingredient lists. ECF No. 1 ¶ 36.

1  on the statutory elements of each offense, not on the actual evidence presented at trial. Thus, it
2  matters not that there is substantial overlap in the evidence used to prove the two offenses, so long
3  as they involve different statutory elements." *Kimbrew*, 406 F.3d at 1151–52 (citation and
4  quotation marks omitted); *Arlt*, 252 F.3d at 1039 (noting that "even when the same conduct forms
5  the basis for two charges, the two charges do not necessarily entail the 'same offense' for double
6  jeopardy purposes"). The moving Defendants' motion to consolidate Counts Two and Three with
7  Count One is therefore DENIED.

### 3. Counts Two and Three are Multiplicitous of Each Other

A different analysis applies, however, to the moving Defendants' contention that Counts Two and Three are multiplicitous of each other. ECF No. 135 at 3. Because Counts Two and Three are charged under the same conspiracy statute, 18 U.S.C. § 371, the Court applies the five-factor test from *Arnold v. United States*, 336 F.2d 347, 350 (9th Cir. 1964), rather than the *Blockburger* test, to determine if a multiple counts may permissibly be charged. *See United States v. Smith*, 424 F.3d 992, 1000 (9th Cir. 2005). The factors to be evaluated are "(1) the differences in the periods of time covered by the alleged conspiracies; (2) the places where the conspiracies were alleged to occur; (3) the persons charged as coconspirators; (4) the overt acts alleged to have been committed; and (5) the statutes alleged to have been violated." *Id*. No one factor is dispositive. *Id*.

In this case, each of the first four factors strongly indicates a single conspiracy. Counts Two and Three charge identical time periods, identical locations, identical co-conspirators, and identical overt acts.

With regard to the fifth factor, as noted above, violation of the same conspiracy statute is charged in Counts Two and Three—18 U.S.C. § 371. However, courts consider "not only the violation of the same statute, but also whether the goals of the conspiracies were similar." *Smith*, 424 F.3d at 1002; *United States v. Stoddard*, 111 F.3d 1450, 1456–57 (9th Cir. 1997) (same). Although the alleged objects of the counts involve violation of two separate statutes (one relating to copyright infringement, and the other to the interstate commerce in misbranded food), both

charges relate to the same fundamental goal: production of realistic counterfeit bottles of a dietary supplement. Shared goals suggest the existence of a single conspiracy. *See Smith*, 424 F.3d at 1002 (where "the goal for all three conspiracies was one and the same—to steal money," three counts under § 371 "should be treated as one conspiracy"). The Indictment in this case thus differs from cases where multiple goals were apparent, indicating multiple conspiracies which could be properly charged under the same statute. *See, e.g.*, *United States v. Guzman*, 852 F.2d 1117, 1121 (9th Cir. 1988) (two conspiracies found under same statute where goal of first conspiracy was to possess and distribute a large shipment of cocaine, while goal of second conspiracy was to set up a cocaine processing lab).

Although Count One stands separately, as to Counts Two and Three, the Court is persuaded that moving Defendants have shown "that the two conspiracies charged in the indictment are indistinguishable in law and fact." *United States v. Montgomery*, 150 F.3d 983, 990 (9th Cir. 1998). The moving Defendants' Motion to consolidate Counts Two and Three is therefore GRANTED. The parties should be prepared to discuss consolidation at the hearing.

**C. Motion for Bill of Particulars (ECF No. 111)**

Defendants Kevin Attiq and Fadi Attiq, joined by Adriana Shayota and Raid Jamil, move pursuant to Federal Rule of Criminal Procedure 7(f) for a Bill of Particulars, seeking the facts and evidence that the Government will use to prove eleven specific points. ECF No. 111 at 17–21. The Government opposes the motion. ECF No. 125 at 13–15.

The Ninth Circuit has explained that a bill of particulars serves three functions: "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense . . . ." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (quotation marks omitted). Whether a bill of particulars is required is a matter within the discretion of a district court. *Id.* A sufficiently detailed indictment generally renders a bill of particulars unnecessary. *Giese*, 597 F.2d at 1180. "Full discovery also obviates the need for a bill of particulars." *Id.*

Here, in addition to pleading the statutory elements at issue for each count, the Indictment sets out the Government's theory of the case in approximately ten pages of factual allegations relating to the three counts charged. In addition, the Government has provided substantial discovery to the Defendants. *See, e.g.*, ECF No. 54 at 2–3; ECF No. 113-1. The moving Defendants' request for additional specific information is better characterized as "a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars." *Giese*, 597 F.3d at 1181. The Court concludes that the moving Defendants have sufficient information of the charges against them such that they can adequately prepare a defense, avoid surprise at trial, and plead double jeopardy if subsequently prosecuted for the same offense. The moving Defendants' Motion for a Bill of Particulars is therefore DENIED.

**D. Motion to Set Government Notice Deadline for Any Co-Defendant Statements and Proposed Redactions the Government Will Introduce at Trial (ECF No. 113)**

Defendant Adriana Shayota, joined by Walid Jamil and Raid Jamil, moves for a deadline by which the Government must provide notice to defense counsel of any co-defendant statements and any proposed redactions that the Government intends to introduce at trial. ECF No. 113. The Government consents to the motion, ECF No. 124, and has agreed to a deadline of August 19, 2016, approximately four weeks before the September 14, 2016 deadline for motions *in limine*. ECF No. 140; *see* ECF No. 77 at 1.

"[A] district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (en banc). In light of the large volume of documents and testimony produced in this matter from the related civil proceedings, *see, e.g.*, ECF No. 54 at 3; ECF No. 113 at 2, the Court agrees that an order setting a deadline is appropriate.

The motion to set a deadline for notice is therefore GRANTED. Given that the non-moving Defendants are currently scheduled for the same pretrial dates as the moving Defendants,

8

Case No. 15-CR-00264-LHK
ORDER REGARDING PRETRIAL MOTIONS

the Court will apply this deadline to all of the cases. The Government shall accordingly provide notice to all defendants. *See* ECF No. 140 (joinder by majority of Defendants in request). The Government shall provide Defendants with notice of any co-defendant statements and any proposed redactions that the Government intends to introduce at trial by August 19, 2016.

### E. Mario Ramirez's & Camilo Ramirez's Motion for Discovery (ECF No. 116)

Defendants Mario Ramirez and Camilo Ramirez (the "Ramirezes"), joined by Kevin Attiq and Fadi Attiq, move for an order requiring the Government to provide five categories of discovery, as detailed below. ECF No. 116. The Government opposes several of the requests and represents that the Government has already provided "thousands of documents consisting of FBI and FDA-OCI reports, records obtained via grand jury subpoena, depositions of several defendants, and documents from the civil litigation between the defendants and Living Essentials." ECF No. 126 at 7. In addition, though the Government generally opposes additional discovery, the Government acknowledges its obligation to disclose exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83 (1963). In that regard, the Government represents that it "will disclose any exculpatory evidence should any be discovered." ECF No. 126 at 5. Against this background, the Court addresses each of the moving Defendants' requests below.

#### 1. Database Searches, Grand Jury Transcripts, and Instructions to the Grand Jury
##### a. Background on Request for Grand Jury Transcripts

The moving Defendants seek disclosure of grand jury transcripts and instructions pertaining to the Ramirezes and MCR Printing and Packaging Corporation ("MCR"). The moving Defendants argue that the grand jury materials will show that the Government failed to adequately investigate before seeking the Indictment and instead allegedly adopted a biased and financially motivated investigation performed by Living Essentials, the plaintiff in a civil suit involving the same underlying facts. ECF No. 116 at 3–7. Defendants argue that the inadequacy of the evidence presented to the grand jury is demonstrated by the Indictment's inaccurate allegations that Camilo Ramirez is a resident of Tijuana, Mexico and that Mario Ramirez is a resident of, and MCR is located in, Chino Hills, CA. ECF No. 1 ¶¶ 15–16. In response, the Government opposes

9

any early disclosure of grand jury materials. ECF No. 126 at 4. The Government acknowledges, however, that the Indictment's allegations concerning the residences of the Ramirezes, as well as the location of MCR, are incorrect, and states that it will seek to correct those allegations at the appropriate time.[2]  ECF No. 126 at 3 n.2.

### b. Discussion Regarding Disclosure of Grand Jury Transcripts

The moving Defendants' request for disclosure of grand jury transcripts is DENIED. First, to the extent the moving Defendants seek early disclosure of statements made to the grand jury by potential government witnesses in the moving Defendants' criminal trial, that relief is barred by the Jencks Act, 18 U.S.C. § 3500. *See, e.g.*, *United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986) (order requiring early disclosure of statements made by prospective government witnesses "was itself inconsistent with the express provision of the Jencks Act and therefore unenforceable"). Moreover, the Government represents that it will voluntarily produce "all Jencks material, including all transcripts of witness testimony, on September 23, 2016, which is approximately 4 weeks before the trial in this case." ECF No. 126 at 4. The Government's agreement to produce these materials in advance of trial, coupled with the Government's obligations to comply with *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), largely obviates the moving Defendants' discovery request.

In addition, to the extent the materials sought are not covered by the Jencks Act, the moving Defendants have not established that disclosure of grand jury transcripts is otherwise appropriate at this time. A court may, in its discretion, authorize disclosure of ordinarily secret grand jury materials "(i) preliminarily to or in connection with a judicial proceeding;" or "(ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of

---

[2] Specifically, in its response to the motion for discovery, the Government "acknowledges that defendant[s] Camilo and Mario Ramirez reside in San Diego, California and that MCR is located in Mexico." ECF No. 126 at 3 n.2. The Government states that it has previously informed the moving Defendants that it intends to ask the Court to strike the incorrect allegations and replace them with the correct residences and location. *Id.*; *see United States v. Neill*, 166 F.3d 943, 948 (9th Cir. 1999) (district court did not err in permitting amendment of indictment, "even when the amendment related to an element of the offense charged," where defendant was not prejudiced).

a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(i) & (ii).  A defendant seeking such a disclosure, however, must show a "particularized need" for the production of grand jury testimony that outweighs the secrecy of grand jury proceedings.  *See In re Grand Jury Proceedings*, 62 F.3d 1175, 1179 (9th Cir. 1995) (to establish particularized need, defendants must show that "the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed").

Here, the moving Defendants argue the involvement of the civil plaintiffs, coupled with the incorrect introductory allegations in the Indictment concerning the residences of the Ramirezes and the location of MCR, shows that the investigation leading to the Indictment was biased or inadequate.  *See* ECF No. 116 at 6, 9–10.  The moving Defendants thus argue that grand jury transcripts are "necessary to evaluate the quality of the information presented to the grand jury, as well as the credibility of those witnesses" and "to establish[] either misconduct by the FBI or the negligence of their investigation."  *Id.* at 5, 6.

Neither rationale establishes a sufficient particularized need on these facts.  First, the moving Defendants' argument concerning the quality of the information presented to the grand jury (whether couched as a challenge to the credibility of witnesses or as a challenge to the adequacy of the Government's investigation) is essentially an argument that the Indictment was returned upon inadequate or incompetent evidence.  "It is clear, however, that when a duly constituted grand jury returns an indictment valid on its face, no independent inquiry may be made to determine the kind of evidence considered by the grand jury in making its decision."  *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974).  Second, the moving Defendants' argument that the incorrect introductory allegations are the result of misconduct before the grand jury, as opposed to simple error, are speculative.  Such "unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the particular need required to outweigh the policy of grand jury secrecy."  *United States v. Ferreboeuf*, 632 F.2d 832, 835 (internal quotation marks omitted); *see also United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir. 1983) (showing of

11
Case No. 15-CR-00264-LHK
ORDER REGARDING PRETRIAL MOTIONS

"flagrant misconduct" required when challenging indictment on grounds of prosecutorial misconduct).

### c. Disclosure of Databases Searched by FBI

In addition to seeking grand jury transcripts, the moving Defendants seek disclosure of the databases the FBI allegedly searched which resulted in an incorrect determination of the residences of the Ramirezes. The moving Defendants seek this disclosure for essentially the same reasons they seek grand jury transcripts, *i.e.*, "to confirm the (lack of) effort actually made to investigate [the Ramirezes'] alleged involvement as opposed to the reliance on the financially driven investigation conducted by Living Essentials." ECF No. 116 at 5–6. It is unclear, however, what specific materials are sought. In addition, the Government's opposition does not specifically address this discovery request. The Court will therefore address this request at the motions hearing.

### 2. Identification of Evidence Seized from 7920 Airway Road, San Diego, California

The moving Defendants request identification of any evidence seized from Suite A1, 7920 Airway Road, San Diego, California 92154 and identification of the portion of the evidence the government intends to present at trial. ECF No. 116 at 10. In response, the Government represents that it "has produced documents that were seized from 7920 Airway Road . . . which are bates stamped as 'MCR Seized 1-3498.'" ECF No. 126 at 10. The Government also states that it "will identify which pieces of evidence it intends to use in its case-in-chief when it files its exhibit list [on September 14, 2016] in accordance with the Court's order for pretrial preparation." *Id.*

The Government's response provides the identification of seized evidence requested by the moving Defendants. To the extent the moving Defendants seek further identification of the specific evidence the Government will use from the 7920 Airway Road location in advance of the pretrial disclosures date ordered by the Court, *see* ECF No. 77, the motion is DENIED.

### 3. Written Communications, Summaries, and Recorded Oral Communications between Living Essentials and the Government

Defendants seek disclosure of written communications, summaries, and recorded oral

communications between Living Essentials and the Government.  ECF No. 116 at 10–12.  The Government opposes the request as beyond the scope of discovery.  Under Federal Rule of Criminal Procedure 16(a)(1)(E)(i), the Government must permit inspection or copying of an item within its possession if "the item is material to preparing the defense."  In *United States v. Santiago*, the Ninth Circuit explained that establishing materiality requires a Defendant to provide "facts which would tend to show that the Government is in possession of information helpful to the defense."  46 F.3d 885, 894 (9th Cir. 1995).  However, "[n]either a general description of the information sought nor conclusory allegations of materiality suffice."  *Id*.

Here, based on the Indictment's incorrect residence allegations, the Ramirezes speculate that something in communications between Living Essentials and the Government would establish that the Government did not properly investigate the case.  That speculation, without more, is an insufficient showing to justify far-ranging discovery.  The motion is DENIED.  The Court notes, however, that the Government must provide any such communications if necessary to comply with its *Brady* obligations.

### 4. Disclosure of Statements from Any Co-Defendant or Third Party for the Purpose of Litigating Severance and Confrontation Clause Issues

The moving Defendants ask that the Court set a deadline for disclosure of statements of third parties (including alleged co-conspirators) who will not be called as witnesses for purposes of litigating severance and Confrontation Clause issues.  ECF No. 116 at 12.  As set forth above, the Court has set a deadline of August 19, 2016 for disclosure of such statements.

### 5. Disclosure of Federal Rule of Evidence 404(b) Material

The moving Defendants ask that the Court set a deadline for notice of Federal Rule of Evidence 404(b) evidence concerning all of the alleged co-conspirators (not limited solely to such evidence concerning the moving Defendants).  ECF No. 116 at 13.  The Government's response does not appear to specifically oppose the moving Defendants' request and states that the Government "will produce any 404(b) evidence concerning the defendants by [August 26, 2016]."  ECF No. 126 at 10.  The Court accordingly ORDERS that the Government provide notice of

13
Case No. 15-CR-00264-LHK
ORDER REGARDING PRETRIAL MOTIONS

Federal Rule of Evidence 404(b) evidence concerning any defendant that it intends to offer at trial by August 26, 2016.

**F. Motion to Dismiss Based on the Compelled Destruction of Evidence (ECF No. 114)**

Mario Ramirez and Camilo Ramirez (the "Ramirezes") move to dismiss the criminal charges against them on the grounds that a civil settlement agreement between the Ramirezes and Living Essentials, the plaintiff in two civil suits relating to the alleged counterfeiting at issue in this criminal case, required the Ramirezes to destroy potentially exculpatory evidence. ECF No. 114. Specifically, the Ramirezes contend that the settlement agreement required them to destroy signed proofs of 5-Hour ENERGY boxes that the Ramirezes printed. The Ramirezes contend that the signed proofs would have been "circumstantial evidence that there was no knowing or intentional involvement in the charged criminal activities." ECF No. 137 at 3.

Although the Ramirezes do not contend that the Government was involved in the civil suit, they argue that the Government worked closely with counsel for Living Essentials in preparing the criminal case at the time the civil settlement occurred and thus should be held responsible for failing to require Living Essentials to "secure all evidence, or at least not require its destruction." ECF No. 114 at 4. For its part, the Government denies involvement in the civil settlement, strenuously contests whether the agreement actually required the Ramirezes to destroy evidence, and argues that responsibility for destruction is attributable to the Ramirezes. ECF No. 129 at 2–3.

It is important to recognize what the Ramirezes do and do not claim. First, the Ramirezes do not contend that the Government destroyed evidence. ECF No. 137 at 2. Second, the Ramirezes do not contend that the Government forced the Ramirezes to destroy evidence. ECF No. 114 at 2–3. Third, the Ramirezes do not contend that the Government colluded with Living Essentials or manipulated the civil settlement process to destroy evidence. ECF No. 137 at 2. Fourth, the Ramirezes do not contend that they have any basis to allege bad faith on the part of the prosecutors. ECF No. 114 at 4. Rather, the Ramirezes contend that because the Government worked with Living Essentials to develop a criminal case, the Government should be held responsible for the Ramirezes' own destruction of evidence as a result of the Ramirezes'

agreement with Living Essentials in a separate civil action.

The Ramirezes cite no authority in support of their novel claim, but it is clear that dismissal of the charges is inappropriate on these facts.[3] Although the alleged destruction of potentially exculpatory evidence here did not occur by the Government's hands, the Court nevertheless considers the Government's obligations concerning the preservation of evidence. As the Ninth Circuit has explained, "[i]n order for destruction of evidence to rise to the level of a constitutional violation" warranting dismissal of an indictment, a defendant must show, among other things, "that the government acted in bad faith, the presence or absence of which 'turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed.'" *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (noting that "a showing of bad faith is required for dismissal"); *see also Arizona v. Youngblood*, 488 U.S. 51, 56–57 (1988) (noting that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law").

Here, the Ramirezes candidly admit that they have no basis to allege bad faith. That admission is fatal to their claim. *See Sivilla*, 714 F.3d at 1172. Indeed, the record provides no basis to conclude that the Government acted in bad faith in connection with the destruction of the signed printing proofs, or that it was even aware of the alleged requirement that the Ramirezes destroy evidence. In that regard, the Government has submitted an affidavit from counsel for Living Essentials stating expressly that Living Essentials "did not notify the United States that settlement negotiations were taking place or that settlement occurred," and that "specific terms of the settlement were not disclosed to the United States due to a confidentiality provision" even after a consent judgment was filed in the civil case. ECF No. 129-1, ¶ 10. The Government has similarly submitted a sworn declaration of an Assistant United States Attorney stating that neither he "nor anyone from federal law enforcement instructed Living Essentials to include any provision

---

[3] Because the Court finds that no violation occurred even assuming the agreement between Living Essentials and the Ramirezes requires destruction of evidence, the Court need not resolve the parties' dispute as to the correct interpretation of the language of the agreement.

whatsoever" in the settlement agreement.  ECF No. 129-2, ¶ 5.  Further, the Ramirezes have not established that the Government was even aware of the specific evidence at issue, much less aware of its "apparent exculpatory value" or that it would be destroyed as a result of the Ramirezes' civil settlement with Living Essentials.  *Cf. Young v. Barnes*, No. 14-CV-03550-EJD, 2016 WL 48118, at *14 (N.D. Cal. Jan. 5, 2016) (" [S]ince the cell phone was never in the possession of the prosecution such that they could examine its contents, it cannot be said that the prosecution was aware of any such exculpatory evidence and acted in bad faith in failing to preserve it.").

Given that the Ninth Circuit has upheld a finding of no bad faith even when evidence was negligently destroyed by the Government in violation of a specific court order, *see Sivilla*, 714 F.3d 1170–72, the Ramirezes' much weaker claim (where the Government was not involved in or aware of the destruction of evidence) does not support a finding of bad faith here.  Because the Ramirezes have not established that the Government acted in bad faith, the motion to dismiss the Indictment is DENIED.[4]

### III.  CONCLUSION

In summary, for the foregoing reasons, the Court rules as follows:

- The Defendants' motions to join co-defendants' motions  are GRANTED.
- The Attiqs' motion to consolidate conspiracies into Count One, ECF No. 111, is DENIED.  The Attiq's motion to consolidate Counts Two and Three is GRANTED.
- The Attiqs' motion for a bill of particulars, ECF No. 111, is DENIED.
- Adriana Shayota's motion to set a deadline for notice of co-defendant statements and proposed redactions, ECF No. 113, is GRANTED, with modified deadlines as shown below.
- The Ramirezes' motion for discovery, ECF No. 116, is GRANTED IN PART and

---

[4] In a footnote, the Ramirezes' motion also requests a remedial adverse-inference jury instruction if the Indictment is not dismissed.  The Ramirezes' request is denied without prejudice.  The Court will address jury instructions during pretrial proceedings.

DENIED IN PART. The Court will address the request regarding database searches at the hearing.

- The Ramirezes' motion to dismiss the Indictment, ECF No. 114, is DENIED.

As discussed above, the following deadlines shall apply:

- For purposes of litigating severance and Confrontation Clause issues, the Government shall provide notice of any co-conspirator or third party statements and redactions that it intends to introduce at trial by August 19, 2016.
- The Government shall provide notice of any Federal Rule of Evidence Rule 404(b) evidence by August 26, 2016.[5]

**IT IS SO ORDERED.**

Dated: May 10, 2016

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

---

[5] In addition, as discussed above, the Government represents that it will produce all Jencks Act material by September 23, 2016.

17
Case No. 15-CR-00264-LHK
ORDER REGARDING PRETRIAL MOTIONS