UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSEPH SHAYOTA, et al.,<br><br>    Defendants. | Case No. 15-CR-00264-LHK<br><br>**ORDER DENYING MOTION TO SUPPRESS STATEMENTS**<br><br>Re: Dkt. No. 115 |

On March 23, 2016, defendants Mario Ramirez and Camilo Ramirez (the "Ramirezes") filed a Motion to Suppress Statements ("Motion"). ECF No. 115. The Government filed an opposition. ECF No. 130. The Ramirezes did not file a reply.

A hearing on the Motion is currently set for May 13, 2016. The Court finds this Motion suitable for disposition without oral argument. The Court accordingly VACATES the May 13, 2016 hearing on the Motion. Having considered the submissions of the parties, the record in this case, and the relevant law, the Court DENIES the Motion.

**I.  BACKGROUND**

A three-count indictment was filed on May 14, 2015 against defendants Joseph Shayota, Adriana Shayota, Justin Shayota, Walid Jamil, Raid Jamil, Kevin Attiq, Fadi Attiq, Leslie Roman,

Juan Romero, Mario Ramirez, and Camilo Ramirez (collectively, "Defendants"). ECF No. 1 ("Indictment"). All Defendants are named in each of the three counts of the Indictment, which relates generally to alleged criminal conspiracies to manufacture and distribute counterfeit bottles of a liquid dietary supplement known as "5-Hour ENERGY." *Id.* ¶ 1. The Indictment alleges that a group of commonly owned and controlled companies, referred to collectively as "Living Essentials," owns the trademarks and copyrights related to 5-Hour ENERGY. *Id.* The Indictment further alleges that the Ramirezes' role was to design and print counterfeit 5-Hour ENERGY boxes. *Id.* ¶¶ 15–16.

The Ramirezes' Motion seeks to suppress statements obtained several years earlier in connection with a civil suit relating to the same alleged counterfeiting of 5-Hour ENERGY. On October 25, 2012, Living Essentials filed a civil complaint in the Eastern District of New York against a number of defendants, alleging that the defendants sold or distributed counterfeited 5-Hour ENERGY. *See Innovation Ventures, LLC et al. v. Ultimate One Distributing Corp. et al.*, No. 12-CV-05354-KAM, ECF No. 1 (E.D.N.Y. Oct. 25, 2012). In connection with that action, Living Essentials applied for, and obtained, several *ex parte* civil seizure orders pursuant to 15 U.S.C. § 1116(d)(1)(A). Those orders directed seizure of counterfeit 5-Hour ENERGY, as well as related materials, such as records concerning merchandise bearing the 5-Hour ENERGY marks and equipment used to bottle, label, or package counterfeit 5-Hour ENERGY.

One such order directed a seizure at the premises of Midwest Wholesale Distributors ("Midwest"). *See Innovation Ventures*, No. 12-CV-05354-KAM, ECF No. 41 at 2 ("Seizure Order").[1] Midwest's principals include Walid Jamil and Justin Shayota, who are also named as defendants in the instant criminal action. *See* ECF No. 133-3 at 12, 16 (Kevin Attiq Depo Tr. 10:19–21, 28:4–13); ECF No. 133-2 ¶ 6. The Seizure Order listed three specific addresses at which Midwest was believed to be operating, including the address at issue here: 7920 Airway

---

[1] A copy of the Seizure Order has been filed in the instant matter as ECF Nos. 112-1 and 133-5. Although the Seizure Order appears to have been signed and issued under seal in the Eastern District of New York on November 13, 2012, *see* Seizure Order at 15, it was filed on November 15, 2012.

2
Case No. 15-CR-00264-LHK
ORDER DENYING MOTION TO SUPPRESS STATEMENTS

Road, Suite A1, San Diego, California, 95124 ("7920 Airway Road"). Seizure Order at 2. The Ramirezes state that in early 2012, Midwest actually subleased the 7920 Airway Road location to MCR Innovations & Packaging, Inc. ("MCR Innovations"). ECF Nos. 112 at 4–5; 112-5. Although the record is not entirely clear, MCR Innovation's principals appear to include Walid Jamil, who is also a principal of Midwest, as well as Mario Ramirez and Camilo Ramirez. ECF No. 112 at 4 (Ramirezes); ECF No. 112-5 at 2 (identifying Walid Jamil as President of MCR Innovations). A seizure pursuant to the Seizure Order was executed at 7920 Airway Road on November 15, 2012.

The Ramirezes' Motion is not accompanied by affidavits of the Ramirezes or any individuals who were present at the seizure. Instead, the Ramirezes' attorney submitted a declaration that stated: "In addition, the facts alleged in the following joint motions are, upon information and belief, true: Motion to Dismiss [DKT 114]; Motion to Suppress Evidence [DKT 112]; Motion to Suppress Statements [DKT 115], and; Motion for Discovery [DKT 116]." ECF No. 118 ¶ 6 (brackets and semicolons in original). The Ramirezes did not file a reply to the Government's opposition to the Ramirezes' Motion.

The Government's opposition to the Ramirezes' Motion provided three affidavits or declarations detailing the circumstances surrounding the Seizure Order's execution. The first is the affidavit of Geoffrey Potter, an attorney of Patterson Belknap Webb & Tyler LLP (counsel for Living Essentials), who made the decision to obtain and execute a seizure order. ECF No. 130-1 ("Potter Aff."). The second is the affidavit of Jay Sheridan, an Associate Managing Director of Kroll Associates (a private investigation agency retained by Living Essentials), who participated in the execution of the Seizure Order on November 15, 2012. ECF No. 130-3 ("Sheridan Aff."). The third is the declaration of Matthew A. Parrella, an Assistant United States Attorney, regarding the Government's lack of involvement in the civil suit, including in obtaining or executing the Seizure Order. ECF No. 130-4 ("Parella Decl.").

The seizure was carried out by a team that included officers from the San Diego Police Department, attorneys from Patterson Belknap Webb & Tyler, and employees of Kroll Associates.

3
Case No. 15-CR-00264-LHK
ORDER DENYING MOTION TO SUPPRESS STATEMENTS

According to the Sheridan Affidavit, at the outset, Jay Sheridan served the Seizure Order on Camilo Ramirez, who was present when the seizure team arrived at 7920 Airway Road. Sheridan Aff. ¶¶ 6, 12. Camilo Ramirez provided a tour of the facility to the seizure team. *Id.* ¶ 7. Sheridan and other Kroll employees then searched for items specified in the Seizure Order. *Id.* ¶ 8. Members of the San Diego Police Department were present to keep the peace, but did not participate in the seizure activities, collect evidence, or conduct witness interviews, and police were not present in any room where witness interviews took place.[2] *Id.* ¶ 9. Camilo Ramirez was interviewed in his office. *Id.* ¶¶ 11. Camilo Ramirez then called Mario Ramirez to come to 7920 Airway Road. *Id.* ¶¶ 11–12. After he arrived, Mario Ramirez was interviewed in a conference room. *Id.* ¶ 12. No person present was told by any member of the seizure team, including by San Diego Police Department officers, that they were not free to leave, or that they were compelled to answer any question. *Id.* ¶ 13. In addition, no person was confined to a room against their will. *Id.* During their interviews, the Ramirezes made statements which are potential evidence in this criminal action. The Ramirezes now move to suppress those statements on Fourth Amendment grounds.

## II.    DISCUSSION

### A.  Evidentiary Hearing

As an initial matter, the Ramirezes request an evidentiary hearing in connection with their Motion. A defendant seeking an evidentiary hearing must "allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). "A hearing is not required if the grounds for suppression consist solely of conclusory allegations of illegality." *United States v. Licavoli*, 604 F.2d 613, 621 (9th Cir. 1979).

Here, the allegations in the Motion are both general and unsupported by affidavits of

---

[2] An unsworn memorandum attached to the Potter Affidavit indicates that San Diego Police Department officers did ask Camilo Ramirez for his identification. *See* Seizure Order pg. 4; ECF No. 130-1, Ex. A, at 2.

personally knowledgeable witnesses. As noted above, the only evidence provided with the Ramirezes' Motion is an attorney declaration stating that: "In addition, the facts alleged in the following joint motions are, upon information and belief, true: Motion to Dismiss [DKT 114]; Motion to Suppress Evidence [DKT 112]; Motion to Suppress Statements [DKT 115], and; Motion for Discovery [DKT 116]." ECF No. 118 ¶ 6 (brackets and semicolons in original). In addition, the Ramirezes did not file a Reply, with or without an affidavit, contradicting any statements made in the Government's affidavits in opposition to the Ramirezes' Motion. The Ramirezes have failed to place material facts in dispute.[3] Accordingly, the Court finds that an evidentiary hearing is not warranted. *See, e.g.*, *United States v. Maiden*, 959 F.2d 242, 1992 WL 72902 (9th Cir. 1992) (unpublished) ("Here, the district court found that an evidentiary hearing was unnecessary because Maiden had not challenged the facts nor raised any specific issues over statements made in the [Government's] declarations."); *see also United States v. Moran-Garcia*, 783 F. Supp. 1266, 1268–69 (S.D. Cal. 1991) ("However, it is the opinion of the Court that the Constitution does not require an evidentiary hearing when no affidavit or declaration has been provided to the Court to place facts into issue.").

### B. Motion to Suppress Statements Provided Without *Miranda* Warnings

#### 1. Background

The Ramirezes first argue that the Court should suppress any statements made by Mario and Camilo Ramirez following service of the Seizure Order because their statements were made without the advisement of rights set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966). The Ramirezes contend that they were subjected to interrogation and were "in custody" because they were presented with a court order. ECF No. 115 at 6. The Government responds that *Miranda* is

---

[3] Moreover, whether the Ramirezes' Motion complies with Criminal Local Rule 47–2(b) is questionable. Specifically, that rule requires that "[m]otions presenting issues of fact shall be supported by affidavits or declarations[.]" *See, e.g.*, *United States v. Guevara*, 745 F. Supp. 2d 1039, 1042 (N.D. Cal. 2010) ("As a preliminary matter, a moving defendant must ordinarily comply with Criminal Local Rule 47–2(b), which requires sworn declarations or affidavits for motions presenting issues of fact.").

inapplicable because the Ramirezes were never in custody. ECF No. 130 at 5–6.[4]

**2. Legal Standard**

"[A]n officer's obligation to give a suspect *Miranda* warnings before interrogation extends only to those instances where the individual is 'in custody.'" *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009) (as amended on denial of rehearing). "[I]n custody" means "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (quotation marks omitted). A defendant is in custody if a "reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." *Bassignani*, 575 F.3d at 883.

The Ninth Circuit has identified five factors relevant to the custody determination, referred to as the *Kim* factors. The *Kim* factors are: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Bassignani*, 575 F.3d at 883 (quoting *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002)).

**3. Discussion Regarding Custody**

Applying the *Kim* factors, the Court concludes that the Ramirezes were not "in custody" during their interviews with Living Essentials attorneys and investigators.

With regard to the first *Kim* factor, the Seizure Order did not summons the Ramirezes to go to any location or require the Ramirezes to submit to an interview. Moreover, Mario Ramirez was not at 7920 Airway Road at the time of the seizure, and it was Camilo Ramirez who called Mario Ramirez, and asked him to come to 7920 Airway Road. Sheridan Aff. ¶ 12.

Second, nothing in the record before the Court suggests that the Living Essentials attorneys

---

[4] The Government also contends that *Miranda* is inapplicable because the Ramirezes were interviewed by private individuals—attorneys and investigators retained by Living Essentials—and not by any person or law enforcement agent acting on behalf of any government agency. Because the Court finds that the question of whether the Ramirezes were in custody is dispositive, it need not reach the Government's alternative arguments.

and investigators adopted the type of confrontational, "aggressive, coercive, and deceptive tone" that suggests custody under the second *Kim* factor. *See Bassignani*, 575 F.3d at 884. Nor does it appear that the Ramirezes actually perceived their interviews in that manner. To the contrary, the Sheridan Affidavit characterizes the Ramirezes' demeanors as "helpful and hospitable," and states that the Ramirezes affirmatively "told our team to contact them if we needed any additional information." Sheridan Aff. ¶ 14.

Third, the physical surroundings of the interviews also suggest a lack of custody. "[A]n interrogation conducted in familiar surroundings weighs against a finding that the defendant was in custody," at least where the defendant is not isolated from the outside world. *Bassignani*, 575 F.3d at 885. Here, the Ramirezes were not interviewed at a police station. *See* Sheridan Aff. ¶¶ 11–12. Camilo Ramirez was interviewed in his own office. Sheridan Aff. ¶ 11. Mario Ramirez "was interviewed at a conference room within his workplace—plainly a familiar environment." *Bassignani*, 575 F.3d at 885; *see* Sheridan Aff. ¶ 12. Nor does it appear that the Ramirezes were isolated from the outside world. Camilo Ramirez in fact called Mario Ramirez, and asked him to come to 7920 Airway Road. Sheridan Aff. ¶ 12. Neither man was told that he was not free to leave, and neither man was confined to a room against his will. *Id.* ¶ 13.

The fourth *Kim* factor is inconclusive, as the record does not appear to establish the length of either interview. The record does suggest that the interviews and other activities following service of the Seizure Order occurred during regular business hours, however. Sheridan Aff. ¶ 7.

Finally, the fifth *Kim* factor also suggests a lack of custody. The Ramirezes were never physically restrained. Indeed, although a San Diego police officer was in the building, no police officer was present in the rooms where the Ramirezes were interviewed. *See Bassignani*, 575 F.3d at 886. While the record does not indicate that the Ramirezes were affirmatively told that they were not under arrest, the Sheridan Affidavit avers expressly that no person associated with the seizure team ever informed the Ramirezes that they were required to answer questions or were not free to leave. Sheridan Affidavit ¶ 13.

In total, although their encounter with Living Essentials' attorneys and investigators began

7

Case No. 15-CR-00264-LHK
ORDER DENYING MOTION TO SUPPRESS STATEMENTS

with the service of a court order, the Ramirezes were subsequently interviewed in a non-coercive manner, in familiar surroundings, by private individuals, and in the absence of law enforcement officers. The *Kim* factors suggest that a reasonable innocent person in such circumstances would not conclude that they were not free to leave. The Court therefore finds that the Ramirezes were not "in custody," and *Miranda* warnings were not required.

### C. Voluntariness of the Ramirezes' Statements

In addition to arguing that their statements should be suppressed because they were not made following *Miranda* warnings, the Ramirezes also argue that their statements must be suppressed because they were involuntary confessions. ECF No. 115.

"The Constitution demands that confessions be made voluntarily." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003) (citing *Lego v. Twomey*, 404 U.S. 477, 483–85 (1972)). "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988).

On the record before the Court, the Government has shown that the Ramirezes' statements were made voluntarily. Although the Ramirezes argue that their "statements were the product of a court order," the Seizure Order does not require them to submit to interviews. Moreover, as described above, the circumstances of their interviews do not suggest that their will was overborne; no law enforcement officers were present during the interviews, neither man was confined or told he was not free to leave, neither man was informed that he was required to answer questions, and no indication of coercion appears in the record. Indeed, as the Government notes, the Ramirezes volunteered to be contacted again if Living Essentials' attorneys and investigators desired additional information. Sheridan Decl. ¶ 14.

### III. CONCLUSION

For the reasons set forth above, the Court concludes that the Ramirezes were not in custody at the time they gave their interviews to the attorneys and investigators retained by Living

8

Essentials and that the statements made in their interviews were voluntary. The Ramirezes' Motion to Suppress Statements, ECF No. 115, is therefore DENIED.

**IT IS SO ORDERED.**

Dated: May 12, 2016

*Lucy H. Koh*
LUCY H. KOH
United States District Judge