United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

UNITED STATES OF AMERICA,
Plaintiff,

v.

JOSEPH SHAYOTA, et al.,
Defendants.

Case No. 15-CR-00264-LHK

**ORDER GRANTING MOTIONS TO SEVER AND ORDER REGARDING TRIAL GROUPING**

Re: Dkt. Nos. 212, 217

Before the Court are separate motions to sever, filed by Defendant Camilo Rodriguez and Mario Ramirez. *See* ECF No. 212 ("Camilo Mot."); ECF No. 217 ("Mario Mot."). The Court finds these motions suitable for decision without oral argument and thus VACATES the motions hearing set for September 15, 2016, at 1:30 p.m. Having considered the submissions of the parties, the relevant law, and the record in this case, Camilo Ramirez and Mario Ramirez's motions to sever are GRANTED. Camilo Ramirez and Mario Ramirez shall be tried together, but separately from the remaining Defendants. The Court will proceed with the following trial grouping:

Trial No. 1: Walid Jamil, Leslie Roman

Trial No. 2: Joseph Shayota, Adriana Shayota

United States District Court
Northern District of California

Trial No. 3: Kevin Attiq, Fadi Attiq

Trial No. 4: Mario Ramirez, Camilo Ramirez

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 14, 2015, a federal grand jury returned a three-count Indictment against Defendants Joseph Shayota, Adriana Shayota, Justin Shayota, Walid Jamil, Raid Jamil, Kevin Attiq, Fadi Attiq, Leslie Roman, Juan Romero, Mario Ramirez, and Camilo Ramirez (collectively, "Defendants"). ECF No. 1 ("Indictment"). All eleven Defendants were named in each of the three counts of the Indictment, which relates generally to alleged conspiracies to manufacture and distribute counterfeit bottles of a liquid dietary supplement known as 5-Hour ENERGY. *Id.* ¶ 1. The first count of the Indictment charges Defendants with conspiring to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320(a). *Id.* at 5. The second count of the Indictment charges Defendants with conspiring to commit criminal copyright infringement, in violation of 18 U.S.C. § 371. *Id.* at 9. The third count of the Indictment charges Defendants with conspiring to introduce misbranded food into interstate commerce, also in violation of 18 U.S.C. § 371. *Id.* at 11.

Each Defendant had a different role in the alleged conspiracy. Walid Jamil, for instance, hired a printing and design company, MCR Printing and Packaging, to "design and print cardboard boxes that mirrored the authentic boxes that held 5-Hour ENERGY." *Id.* at 4. Mario Ramirez owns MCR Printing and Packaging, and was hired by Walid Jamil to design and manufacture the 5-Hour ENERGY boxes. *Id.* at 5. Camilo Ramirez is Mario's son, and assisted his father at MCR Printing and Packaging. Kevin Attiq and Fadi Attiq owned Dan-Dee Company, which "ordered thousands of bottles of counterfeit 5-Hour ENERGY" from Walid Jamil and later sold these bottles to wholesalers. *Id.* at 4.

On March 2, 2016, Justin Shayota pled guilty to Counts 1 and 3 of the Indictment pursuant to a plea agreement. ECF No. 105; ECF No. 106. Juan Romero is a fugitive. ECF No. 147 at 4.

On March 23, 2016, Defendants filed several pre-trial motions. These motions included motions to sever, motions to suppress, motions to consolidate counts in the Indictment, and other motions. The Court resolved these motions in a series of orders in May 2016. *See* ECF No. 144

(motions to join, discovery motions, motions to consolidate, motion for bill of particulars, scheduling motions, and motions to dismiss); ECF No. 145 (motions to sever by Kevin Attiq, Fadi Attiq, and Joseph Shayota); ECF No. 148 (motion to suppress by Camilo Ramirez and Mario Ramirez); ECF No. 150 (motion to withdraw as counsel, discovery motion); ECF No. 151 (motion to suppress by Camilo Ramirez and Mario Ramirez).

The Court's May 10, 2016 order on Kevin Attiq, Fadi Attiq, and Joseph Shayota's motions to sever (hereinafter, the "May Severance Order"), is particularly relevant to the instant Order. In the May Severance Order, the Court granted Kevin Attiq and Fadi Attiq's motion to sever. ECF No. 145 at 5. In reaching this conclusion, the Court noted that Kevin Attiq and Fadi Attiq "ha[d] made a reasonable showing that [co-Defendant] Walid Jamil would testify if severed," and that Walid Jamil would offer exculpatory testimony. *Id.* at 3. "In particular," Kevin Attiq and Fadi Attiq had "provided a declaration from Walid Jamil directly stating that he would testify on behalf of [Kevin Attiq and Fadi Attiq] if their case were to be severed, but that he would not wish to testify at a joint trial." *Id.* at 3–4.

The Court denied Joseph Shayota's motion to sever without prejudice. The basis of Joseph Shayota's motion was that the Government would "introduce at trial out-of-court confessions or admissions made by [Walid] Jamil in the form of deposition testimony from [certain] related civil proceedings." *Id.* at 5. Such testimony, Joseph Shayota argued, would run afoul of the holding in *Bruton v. United States*, 391 U.S. 123 (1968). The Court found Joseph Shayota's motion to sever premature, as the Government had not yet indicated what deposition testimony it would offer at trial. ECF No. 145 at 5–6.

In a separate pre-trial order that was filed on May 10, 2016, the Court determined that Counts Two and Three of the Indictment, which charged Defendants with violating the general conspiracy statute, 18 U.S.C. § 371, were "multiplicitous of each other." ECF No. 144 at 6. As the Court noted, Defendants had shown that the two conspiracies charged in Counts Two and Three were indistinguishable in law and fact. *Id.* at 7. Pursuant to the Court's ruling, the Government filed on June 29, 2016 a two-count Superseding Information. ECF No. 169

United States District Court
Northern District of California

("Superseding Information"). The first count in the Superseding Information is for conspiracy to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320(a). *Id.* at 5. The second count in the Superseding Information is for conspiracy to commit criminal copyright infringement and to introduce misbranded food into interstate commerce, in violation of 18 U.S.C. § 371. *Id.* at 8.

On August 24, 2016, the Court held a status conference. During this status conference, the parties stated that they planned to file additional pre-trial motions, and the Court set briefing schedules for any additional motions to sever and any motions in limine, motions to exclude statements by co-conspirators, and motions related to Federal Rule of Evidence 404(b). ECF No. 207 at 1–2. The Court also ordered the parties to meet and confer regarding severance issues and file a Joint Severance Status Report.

The parties filed their Joint Severance Status Report on August 26, 2016. ECF No. 208. In this report, the parties agreed to hold separate trials for (1) Joseph Shayota and Adriana Shayota; and (2) Kevin Attiq and Fadi Attiq. *Id.* at 1. The Government proposed a single trial for the remaining Defendants: Walid Jamil, Raid Jamil, Leslie Roman, Mario Ramirez, and Camilo Ramirez. *Id.* "All of the Defendants, except for Raid Jamil, Mario Ramirez[,] and Camilo Ramirez, stipulate and agree[d]" to this proposed trial grouping. *Id.*

On September 1 and September 2, 2016, Camilo Ramirez and Mario Ramirez filed motions to sever. On September 9, 2016, the Government filed a single opposition. ECF No. 228.

On September 13, 2016, Raid Jamil pled guilty to Count 2 of the Superseding Information pursuant to a plea agreement. ECF No. 237.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 14 provides that a district court, in its discretion, may grant a severance when it appears that a joint trial would prejudice a defendant. Where the basis for a claim for severance is the need for a co-defendant's testimony, a district court should weigh factors including (1) "the good faith of the defendant's intent to have a codefendant testify;" (2) "the possible weight and credibility of the predicted testimony;" (3) "the probability that such testimony will materialize;" (4) "the economy of a joint trial;" and (5) "the degree to which the

United States District Court
Northern District of California

asserted codefendant testimony is exculpatory." *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991) (citing *United States v. Kaplan*, 554 F.2d 958, 966 (9th Cir. 1977) (per curiam)).

**III. DISCUSSION**

Camilo Ramirez and Mario Ramirez's motions are largely identical to one another, and, as the Government acknowledges, are substantially similar to Kevin Attiq and Fadi Attiq's motion to sever, which the Court granted. Both Camilo Ramirez and Mario Ramirez argue that severance is appropriate because (1) Walid Jamil would offer exculpatory testimony at a severed trial, (2) the Government will offer statements by co-conspirators that are inadmissible unless severance is granted, and (3) there is a risk of prejudicial spill-over. *See* Mario Mot. at 4–6.

The Court need not reach arguments (2) or (3) because, as with Kevin Attiq and Fadi Attiq, the Court agrees that severance is appropriate because of the exculpatory testimony that Walid Jamil might offer at a severed trial.[1] Camilo Ramirez's motion includes an excerpt from Walid Jamil's deposition that was taken in a related civil case, *Shayota v. Green Health Stores, Inc.* This excerpt includes the following exchange:

Q: Did you buy them already done or did you go manufacture U.S. labels for 5-hour Energy?

A: I had somebody manufacture them.

Q: And who is that somebody?

A: Some company.

Q: What company?

A: I don't recall the name.

Q: Were Mario and Camilo, were they involved in this at all?

A: Absolutely not.

---

[1] The Court notes that it would likely be premature to rule on whether severance is necessary because of statements by co-conspirators. As the parties acknowledge, "[m]otions to exclude statements by co-conspirators are not due to be filed until September 21, 2016." Mario Mot. at 5 n.4. Additionally, in the Court's prior motion to sever order, the Court observed that "the remedy for . . . spill-over prejudice is generally an appropriate jury instruction, not severance." ECF No. 145 at 5 n.1.

United States District Court
Northern District of California

Q: You didn't use their factory in TJ or in Tecate for any labels ever?

A: Absolutely not.

Q: Do they know about your 5-hour Energy deal?

A: Absolutely not. Now they do that I mentioned it.

ECF No. 212-1 at 4. Both Mario Ramirez and Camilo Ramirez also included a declaration from Walid Jamil. In this declaration, Walid Jamil confirmed, consistent with his deposition, "that neither Mario Ramirez nor Camilo Ramirez were involved in the relabeling of the 5-Hour Energy bottles." ECF No. 219 at 2. Walid Jamil also stated that he "would wish not to testify at a joint trial of all co-defendants," but that, "[i]f my case was severed from that of Mario and Camilo Ramirez, I would testify on their behalf." *Id.*

Walid Jamil's statements counsel in favor of severance. As the Ninth Circuit noted in *Mariscal*, there are five factors that the Court should consider in weighing whether to sever defendants: (1) "the good faith of the defendant's intent to have a codefendant testify;" (2) "the possible weight and credibility of the predicted testimony;" (3) "the probability that such testimony will materialize;" (4) "the economy of a joint trial;" and (5) "the degree to which the asserted codefendant testimony is exculpatory." 939 F.2d at 885. Here, other than the economy of a joint trial, all factors point in Mario and Camilo Ramirez's favor.

There is nothing in the record, for instance, to suggest a lack of good faith by Mario Ramirez or Camilo Ramirez. Second, the Superseding Information states that Walid Jamil hired Mario Ramirez "to design and manufacture display boxes that appeared to be legitimate 5-Hour ENERGY display boxes," and that Camilo Ramirez "assisted his father . . . with designing and printing" the boxes. Superseding Information at 4–5. Walid Jamil placed counterfeit 5-Hour ENERGY into these display boxes, and sent the boxes to individuals like Kevin Attiq and Fadi Attiq. Given Walid Jamil's central role in the conspiracy, it is possible that a jury would accord Walid Jamil's testimony significant weight and credibility if Walid Jamil testified at Mario and Camilo Ramirez's trial. Third, Walid Jamil has stated, in a signed declaration, that he would

United States District Court
Northern District of California

testify at Mario and Camilo Ramirez's trial, but not at a joint trial of all Defendants. Finally, Walid Jamil testimony would be exculpatory.

The Government does not challenge the foregoing *Mariscal* analysis, but instead proposes that Kevin Attiq, Fadi Attiq, Mario Ramirez, and Camilo Ramirez be tried together in a single trial, as Walid Jamil would offer exculpatory testimony as to each Defendant. Opp'n at 7. For the reasons that follow, the Court declines the Government's request.

First, Walid Jamil has not indicated that he would testify if Kevin Attiq, Fadi Attiq, Mario Ramirez, and Camilo Ramirez were tried together, but separate from all other Defendants. However, the Court's May Severance Order stated that Kevin Attiq and Fadi Attiq "shall be tried together, but separately from the remaining [D]efendants." ECF No. 145 at 2. The parties have prepared for trial with this understanding in mind. Moreover, the parties' August 28, 2016 Joint Severance Status Report further confirms that both the Government and Defendants agree that Kevin Attiq and Fadi Attiq should be tried separately from all other Defendants. ECF No. 208 at 1.

Second, and relatedly, the exculpatory testimony that Walid Jamil would offer would be significantly different for the two sets of Defendants, given their differing roles in the conspiracy. Based on the Superseding Information, Walid Jamil hired Mario Ramirez and Camilo Ramirez to design and manufacturer counterfeit 5-Hour ENERGY boxes. Hence, Walid Jamil states that "Mario and Camilo Ramirez did not know the 5-Hour Energy product was [being] 'repacked' or counterfeited." ECF No. 212-2 at 2. Walid Jamil then sold these products to Kevin Attiq and Fadi Attiq, but Walid Jamil states that Kevin Attiq and Fadi Attiq "never paid any money to fund the [counterfeiting], and never participated in any way with the relabeling and repackaging." ECF No. 135-1 at 2.

In sum, because Walid Jamil (1) has not stated that he would testify if Kevin Attiq, Fadi Attiq, Mario Ramirez, and Camilo Ramirez were jointly tried; and (2) would likely offer significantly different exculpatory testimony, the Court declines to try Kevin Attiq, Fadi Attiq, Mario Ramirez, and Camilo Ramirez together.

United States District Court
Northern District of California

Accordingly, Mario Ramirez and Camilo Ramirez's motions to sever are GRANTED. Mario Ramirez and Camilo Ramirez will be tried together, but separately from the other Defendants. The Court will proceed with the following trial grouping: Walid Jamil and Leslie Roman will be tried together in a separate trial; Joseph Shayota and Adriana Shayota will be tried together in a separate trial; and Kevin Attiq and Fadi Attiq will be tried together in a separate trial; and Mario and Camilo Ramirez will be tried together in a separate trial.

## IV. CONCLUSION

For the foregoing reasons, Camilo and Mario Ramirez's motions to sever are GRANTED. The Court will proceed with the following trial grouping:

Trial No. 1: Walid Jamil, Leslie Roman

Trial No. 2: Joseph Shayota, Adriana Shayota

Trial No. 3: Kevin Attiq, Fadi Attiq

Trial No. 4: Mario Ramirez, Camilo Ramirez

**IT IS SO ORDERED.**

Dated: September 13, 2016.

Lucy H. Koh

LUCY H. KOH
United States District Judge