UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOSEPH SHAYOTA, et al.<br><br>　　　　Defendants. | Case No.15-CR-00264-LHK<br><br>**ORDER REGARDING DEFENDANTS' MOTIONS TO EXCLUDE RULE 404(B) EVIDENCE**<br><br>Re: Dkt. Nos. 213, 213, 218, 220 |

Before the Court are four motions to exclude evidence under Federal Rule of Evidence ("Rule") 404(b). Camilo Ramirez, ECF No. 213 ("Camilo Ramirez Mot."), Walid Jamil, ECF No. 216 ("Walid Jamil Mot."), Mario Ramirez, ECF No. 218 ("Mario Ramirez Mot."), and Joseph and Adriana Shayota, ECF No. 220 ("Shayota Mot.") filed the instant four motions.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On May 14, 2015, a federal grand jury returned a three-count Indictment against Defendants Joseph Shayota, Adriana Shayota, Justin Shayota, Walid Jamil, Raid Jamil, Kevin Attiq, Fadi Attiq, Leslie Roman, Juan Romero, Mario Ramirez, and Camilo Ramirez (collectively, "Defendants"). ECF No. 1. All eleven Defendants were named in each of the three counts of the Indictment, which relates generally to alleged conspiracies to manufacture and distribute

1
Case No.15-CR-00264-LHK
ORDER REGARDING DEFENDANTS' MOTIONS TO EXCLUDE RULE 404(B) EVIDENCE

counterfeit bottles of a liquid dietary supplement known as 5-Hour ENERGY. *Id.* ¶ 1. In a pre-trial order that was filed on May 10, 2016, the Court determined that Counts Two and Three of the Indictment, which charged Defendants with violating the general conspiracy statute, 18 U.S.C. § 371, were "multiplicitous of each other." ECF No. 144 at 6. Pursuant to the Court's ruling, on June 29, 2016, the Government filed a two-count Superseding Information in the United States District Court for the Northern District of California. ECF No. 169 ("Superseding Information"). The first count in the Superseding Information is for conspiracy to traffic in counterfeit goods in violation of 18 U.S.C. § 2320(a). *Id.* ¶ 16–28. The second count in the Superseding Information is for conspiracy to commit criminal copyright infringement and to introduce misbranded food into interstate commerce in violation of 17 U.S.C. § 506, 18 U.S.C. § 2319, and 21 U.S.C. §§ 331 & 333. *Id.* ¶ 29–32.

On March 2, 2016, Justin Shayota pled guilty to Counts 1 and 3 of the Indictment pursuant to a plea agreement. ECF No. 105; ECF No. 106. On September 13, 2016, Raid Jamil pled guilty to Count 2 of the Superseding Information pursuant to a plea agreement. ECF No. 237. On September 23, 2016, Leslie Roman pled guilty to Count 2 of the Superseding Information pursuant to a plea agreement. ECF No. 275. Juan Romero is a fugitive. ECF No. 147 at 4.

On August 26, 2016, the Government filed a notice pursuant to Rule 404(b) stating that it intended to introduce certain evidence of prior acts at trial. ECF No. 209 ("Notice"). Specifically, the Government stated that it intended to introduce deposition transcripts and other documents showing that Defendants had previously engaged in schemes to purchase products intended for sale in international markets and sell them to wholesalers in the United States, and in some cases to manufacture counterfeit packaging to repackage the products for domestic sale. *Id.* at 2–3.

The Government alleges five schemes. First, the Government claims that Joseph Shayota, Adriana Shayota, Walid Jamil, Mario Ramirez, and Camilo Ramirez "engaged in a scheme to divert, counterfeit, and repackage Equal, Splenda, and Uncle Ben's Rice" ("Equal scheme"). *Id.* at 2. Second, the Government claims that Walid Jamil and Mario Ramirez "engaged in a scheme to divert, counterfeit, and repackage Truvia" ("Truvia scheme"). *Id.* Third, the Government claims

that Joseph Shayota, Adriana Shayota, Kevin Attiq, and Fadi Attiq "engaged in a scheme to divert Monster Energy drinks and Mars candy" ("Monster scheme"). *Id.* at 3. Fourth, the Government claims that Joseph Shayota and Adriana Shayota "diverted and sold" various products, including products made by Welch's and Motts ("Welch's and Motts scheme"). *Id.* Fifth, the Government claims that Walid Jamil "diverted numerous products, including Pillsbury products, that were intended to be sold in Mexico but were sold in [the] United States" ("Pillsbury scheme"). *Id.*[1]

Defendants responded to this notice with four separate motions to exclude the evidence under Rule 404(b). These motions argue, *inter alia*, that the Government failed to provide adequate notice under Rule 404(b) and that the Government has failed to show that the evidence was being offered for a permitted use under Rule 404(b). *See* Camilo Ramirez Mot. at 2–3; Mario Ramirez Mot. at 3–4; Shayota Mot. at 5. The motions also argue that the evidence is inadmissible under Rule 403 because the danger of unfair prejudice to Defendants substantially outweighs the probative value of the evidence. Shayota Mot. at 9–10.

## II. LEGAL STANDARD

Rule 404(b) states as follows:

  (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to

---

[1] The Government's notice also stated that the Government intended to introduce several other pieces of evidence. First, the Government intended to introduce evidence of settlement agreements in *Innovation Ventures, et al. v. Ultimate One Distributing Corp., et al.*, No. 12-CV-5354 (KAM), against Joseph Shayota, Adriana Shayota, Leslie Roman, Mario Ramirez, Camilo Ramirez, Kevin Attiq, and Fadi Attiq. Notice at 4–5. Second, the Government intended to introduce evidence of court orders granting summary judgment and a permanent injunction in two civil cases, *Innovation Ventures, LLC et al. v. Ultimate One Distributing Corp., et al.*, No. 12-CV-5354 (KAM), and *Innovation Ventures, LLC et al. v. Pittsburg Wholesale Grocers Inc., et al.*, No. 13-CV-6397 (KAM), against Walid Jamil and Raid Jamil. Defendants' motions to exclude objected to the introduction of this evidence. Camilo Ramirez Mot. at 3; Walid Jamil Mot. at 10–12; Mario Ramirez Mot. at 5–6; Shayota Mot. at 10–12. In its reply briefs, the Government did not oppose the motions to exclude this evidence and also "elect[ed] not to introduce the settlements at this time." ECF No. 232 at 7; ECF No. 233 at 7, ECF No. 234 at 6–7. The Court therefore GRANTS Defendants' motions to exclude evidence of the settlement agreements and the court orders granting summary judgment and a permanent injunction.
  Walid Jamil's motion to exclude went further, asking that the Court exclude several pieces of evidence that the Government has not sought to admit, including a contempt of court finding in *Innovation Ventures, et al. v. Ultimate One Distributing Corp., et al.*, No. 12-CV-5354 (KAM), and a pending criminal case in Nevada. Walid Jamil Mot. at 13–15. The Court DENIES Walid Jamil's motion as premature.

prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

Rule 404(b) is a rule "of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove only criminal disposition." *Heath v. Cast*, 813 F.2d 254, 259 (9th Cir. 1987). "Rule 404(b) provides that the district court may admit evidence of prior bad acts if it (1) tends to prove a material point; (2) is not too remote in time; (3) is based upon sufficient evidence; and, (4) in some cases, is similar to the offense charged." *United States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010). If these four elements are satisfied, a court must balance the probative value of the evidence against its prejudicial effect to determine whether it is admissible under Rule 403. *United States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007) (en banc). Under Rule 403, a court may exclude otherwise admissible evidence if its probative value is substantially outweighed by unfair prejudice, confusion, delay, or other factors.

Under Rule 404(b), if a defendant so requests, the Government must "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial." FED. R. EVID. 404(b)(2)(A). This notice is "designed to reduce surprise and promote early resolution of admissibility issues." *United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir. 1999). A district court has discretion in deciding whether the Government has satisfied the Rule's notice requirement. *See United States v. Peyton*, 28 F. App'x 655, 657–58 (9th Cir. 2002) (holding in the context of a Rule 404(b) motion that "[a] district court's evidentiary rulings during trial are reviewed for an abuse of

discretion"); FED. R. EVID. 404, Advisory Committee Notes on 1991 Amendments ("The court in its discretion may, under the facts, decide that the particular request or notice was not reasonable, either because of the lack of timeliness or completeness.").

**III. Discussion**

The Government's notice describes evidence of five different diverting "schemes" involving various defendants. After discussing the adequacy of the Government's notice, the Court addresses the four *Lozano* factors in turn and evaluates how each factor bears on each of the five alleged schemes. Next, the Court considers whether the evidence is admissible under Rule 403. Finally, the Court addresses whether to give a limiting instruction in admitting the Government's proffered evidence.

**A. Adequacy of the Government's Notice**

Rule 404(b) requires the Government to "provide reasonable notice of the general nature of [Rule 404(b)] evidence" if a defendant requests such notice. FED. R. EVID. 404(b)(2)(A). In giving its notice, the Government stated that it intended to use evidence of prior acts "to prove the defendants' knowledge, intent, preparation, plan, and absence of mistake or accident." Notice at 2. In its replies to Defendants' motions to exclude the evidence, the Government stated that it was introducing evidence of prior acts to show that Defendants "had the knowledge and intent to counterfeit packaging when repackaging products" and to show Defendants' "preparation and planning in regards to purchasing products in bulk, purchasing equipment, hiring workers, and establishing a distribution network." ECF No. 232 at 6–7; ECF No. 233 at 6; *see also* ECF No. 234 at 3–4 (making a similar argument).

Defendants argue that this notice is inadequate to satisfy Rule 404(b). Joseph and Adriana Shayota, as well as Mario Ramirez, cite *United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc), for the proposition that the Government was required to "identify the specific purpose or purposes for which the government offers the evidence." ECF No. 220 at 5; *see also* ECF No. 218 at 4. However, the portion of *Curtin* that Defendants cite is part of a block quotation from a Sixth Circuit case, *United States v. Merriweather*, 78 F.3d 1070 (6th Cir.1996), and the context of *Curtin*

5
Case No.15-CR-00264-LHK
ORDER REGARDING DEFENDANTS' MOTIONS TO EXCLUDE RULE 404(B) EVIDENCE

does not necessarily suggest that the Ninth Circuit intended to adopt that aspect of the Sixth Circuit's ruling. *Curtin* quoted *Merriweather* as part of its holding that courts should conduct Rule 403 balancing as part of the analysis under Rule 404(b). *See Curtin*, 489 F.3d at 957 (introducing the block quotation from *Merriweather* with the statement that "[t]he Sixth Circuit has gone so far as to mandate that a trial court considering Rule 404(b) evidence automatically conduct a Rule 403 analysis prior to determining admissibility"). *Curtin* did not address the adequacy of the Government's notice, and therefore its quotation of that portion of the *Merriweather* case may not have been intended as an endorsement of the Sixth Circuit's approach to notice. *See* FED. R. EVID. 404, Advisory Committee Notes on 1991 Amendments ("[T]he Committee opted for a generalized notice provision which requires the prosecution to apprise the defense of the general nature of the evidence of extrinsic acts.").

Nevertheless, even if the rule of *Merriweather* does apply, and the Government was required to identify the specific purposes for which it intended to use the proffered Rule 404(b) evidence, the Government's notice was adequate. The Government has stated that it intends to use evidence of the schemes to show that Defendants "had the knowledge and intent to counterfeit packaging when repackaging products" and to demonstrate Defendants' "preparation and planning in regards to purchasing products in bulk, purchasing equipment, hiring workers, and establishing a distribution network." ECF No. 232 at 6–7; ECF No. 233 at 6; *see also* ECF No. 234 at 3–4. *See United States v. Erickson*, 75 F.3d 470, 478 (9th Cir. 1996) (holding that the government satisfied Rule 404(b)'s notice requirement by providing the defendant with the proffered evidence before trial, and noting that the defendant "was not prejudiced by any lack of notice."). The Government also claims that the number of schemes helps to rebut Defendants' claims that they lacked the "requisite criminal knowledge" and therefore shows "knowledge . . . and absence of mistake or accident" in the 5-Hour ENERGY conspiracy. ECF No. 232 at 6–7. The Government's notice sufficiently disclosed the nature of the evidence the Government intended to introduce and its purpose. The Court therefore exercises its discretion to find that the notice given by the Government was sufficient under Rule 404(b).

### B. *Lozano* Factors

Having found that the notice requirement was met, the Court next considers whether the Government's evidence of the alleged schemes is admissible under Rule 404(b). In doing so, the Court analyzes in turn the four factors outlined in *United States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010), namely materiality, remoteness in time, sufficiency of the evidence, and similarity between the alleged act and the charged act. Where necessary, the Court analyzes these factors for each scheme individually.

#### 1. Materiality

The first factor in the Rule 404(b) analysis is materiality. The Government argues that all five schemes are relevant to proving "the defendants' knowledge, intent, preparation, plan, and absence of mistake or accident." *Id.* In each of the five schemes, Defendants purchased food products that were intended to be sold internationally and resold those products inside the United States. Notice at 2–3; Deposition of Joseph Shayota, Bates No. 0019203; Shayota Mot. at 2; Walid Jamil Mot. at 5–8. In two of those schemes – the Equal scheme and the Truvia scheme – Defendants also manufactured counterfeit packaging to repackage the products before selling them in the United States. Deposition of Joseph Shayota, Bates No. 0019228–29.

At trial, the Government must show that Defendants acted "knowingly" and "intentionally." *See, e.g.*, 18 U.S.C. § 2320(a)(1). All five schemes are relevant to these elements because they tend to show that Defendants were sophisticated businesspeople who understood methods of repackaging, channels of distribution, and other information necessary to carry out a crime on the scale of the conspiracy alleged in the Superseding Information. *See United States v. Rojas*, 81 F. App'x 965, 967 (9th Cir. 2003) (holding that a defendant's "prior manufacturing and passing of counterfeit currency" was admissible to show knowledge and intent in a counterfeiting case); *United States v. Sanchez*, 590 F. App'x 675, 676 (9th Cir. 2015) (affirming a district court's admission of evidence of a defendant's prior drug-smuggling activities because those acts "tend to show knowledge, training, and eagerness on the part of [the defendant] to learn more about drug smuggling"). A reasonable juror might doubt that Defendants would have the ability to run a

scheme as large and complex as the Government alleges unless he or she heard evidence showing that Defendants had learned these skills from past experience. The evidence also tends to show that because Defendants were sophisticated actors in the distribution and packing industry, their actions were knowing and intentional. *Cf. United States v. Montgomery*, 150 F.3d 983, 1001 (9th Cir. 1998) ("A jury could properly infer from [the defendant's] prior conviction for conspiracy to manufacture methamphetamine that he was sufficiently familiar with the illicit production of methamphetamine so as to possess knowledge regarding its distribution."). These facts tend to show that Defendants' actions were likely not the result of mistake or accident.

The Court finds that evidence about all five schemes is material to Defendants' knowledge, intent, preparation, plan, and absence of mistake or accident. The first factor is therefore met for all five schemes.

### 2. Remoteness in Time

The Government claims, and Defendants do not contest, that each scheme "took place in the years preceding the 5-Hour ENERGY conspiracy." Notice at 6. Defendants do not claim that any of the five schemes was too remote in time. The second factor is therefore met for all five schemes.

### 3. Sufficiency of the Evidence

The third factor is whether the evidence is sufficient to support a finding that Defendants committed the alleged acts. *Huddleston v. United States*, 485 U.S. 681, 685 (1988) (establishing sufficiency of the evidence as the proper standard). Each of the five schemes involves a different group of Defendants, and therefore the Court considers the sufficiency of the evidence for each of the five schemes separately.

#### a. Equal, Splenda, and Uncle Ben's Rice Scheme

Joseph and Adriana Shayota do not dispute that they were involved in the Equal scheme. *See, e.g.*, Shayota Mot. at 2 ("Mr. & Mrs. Shayota engaged in diverting."); Deposition of Joseph Shayota, Bates Nos. 0019202–10. However, Joseph and Adriana Shayota argue that the evidence does not show that they engaged in a prior bad act because "diversion" (reselling products outside

8
Case No.15-CR-00264-LHK
ORDER REGARDING DEFENDANTS' MOTIONS TO EXCLUDE RULE 404(B) EVIDENCE

an authorized distribution area) is a commonly accepted "gray market" activity. Shayota Mot. at at 8. The Government counters that repackaging food products is illegal under 18 U.S.C. § 2320 if the repackager does not have authorization to reproduce the intellectual property in the packaging. ECF No. 233 at 2. However, Rule 404(b) "applies to all 'other acts,' not just bad acts," *Vega*, 188 F.3d at 1154, and therefore the conduct alleged need not be legally or morally objectionable to be admissible under Rule 404(b). Additionally, whether diversion is illegal is irrelevant. The Government introduces the evidence of the Equal scheme in order to show that Defendants' knowledge, intent, preparation, plan, and absence of mistake or accident. None of these factors depend on the act being illegal. Whether diversion was a crime or not, Defendants' behavior tends to show how they gained knowledge, skills, and networks necessary to carry out the 5-Hour ENERGY scheme. Additionally, even if Defendants believed they were only violating contractual provisions, *see* Deposition of Joseph Shayota, Bates Nos. 001922829, this belief would still be relevant to Defendants' absence of mistake or accident about the scope of their authorization or their role in the scheme. The Court therefore finds that the third factor is met as to Joseph and Adriana Shayota.

Walid Jamil also admits that he was involved in the Equal scheme. *See, e.g.*, Walid Jamil Mot. at 5–6. Walid Jamil argues that diversion is a common and legitimate business practice, *id.* at 6–7, but as discussed above, Rule 404(b) does not require prior acts to be illegal or wrong. Additionally, whether Walid Jamil knew he was committing a crime is irrelevant to the purposes for which the Government seeks to introduce the evidence. The Court therefore finds that the third factor is met as to Walid Jamil.

Mario Ramirez's motion to exclude does not concede that Mario Ramirez engaged in the Equal scheme. *See* Mario Ramirez Mot. at 4–5. However, in the deposition transcripts and other documents provided by the Government, Mario Ramirez admits that he manufactured packaging for Walid Jamil for use in the Equal scheme. Deposition of Mario Ramirez, Bates No. 0012910–11. Mario Ramirez argues that his role in the scheme was minor and that his conduct was not illegal. Mario Ramirez Mot. at 5. However, even though Mario Ramirez was less central to the

Equal scheme than Walid Jamil or Joseph and Adriana Shayota, he still engaged in the scheme to some extent, and evidence of his involvement is relevant to his knowledge, intent, preparation, plan, and absence of mistake or accident in the course of the 5-Hour ENERGY conspiracy. Although the Government's evidence is far from overwhelming, it is sufficient "to support a finding by the jury that the defendant committed the similar act." *Huddleston*, 485 U.S. at 685. The Court therefore finds that the third factor is met as to Mario Ramirez.

Camilo Ramirez claims that "[n]othing in any of the depositions suggests that [Camilo Ramirez] was involved in any way with this alleged scheme." ECF No. 213 at 2. The Government has not cited any particular part of the depositions or other documents that show that Camilo Ramirez was involved in the Equal scheme. Based on the Court's own review of the documents, the closest that the Government's evidence comes to implicating Camilo Ramirez in this scheme is the statement that Camilo was recently the president of MCR Printing and Packaging ("MCR"). Deposition of Mario Ramirez, Bates No. 5-HR-000220. Mario Ramirez, Camilo Ramirez's father and the CEO of MCR, has admitted that MCR produced cardboard boxes for Walid Jamil to use in repackaging Equal, Splenda, and Uncle Ben's Rice. *Id.* at Bates No. 5-HR-0012911. However, as far as the Court is able to determine, the documents provided by the Government show only that Camilo Ramirez was in a position of authority at MCR when Mario Ramirez and Walid Jamil made this arrangement, which accounted for less than .05% of MCR's sales at the time. *Id.* at Bates No. 0012907. This evidence alone is insufficient to show that Camilo Ramirez committed the alleged act. Because the third factor is not met as to Camilo Ramirez, the Court GRANTS Camilo Ramirez's motion under Rule 404(b) to exclude evidence of the Equal scheme, which is the only Rule 404(b) evidence the Government seeks to introduce against Camilo Ramirez.

### b. Truvia Scheme

Walid Jamil admits that he was involved in the Truvia scheme. Walid Jamil Mot. at 7–8. As with the Equal scheme, Walid Jamil argues that he did not engage in a bad act because diversion is a common and legal business practice. *Id.* at 5–7. However, as with the Equal scheme, even if the Truvia scheme is common and legal, it is nevertheless relevant to Walid Jamil's

knowledge, intent, preparation, plan, and lack of mistake or accident. Therefore, the Court finds that the third factor is met as to Walid Jamil.

Mario Ramirez's motion to exclude does not concede that he was involved in the Truvia scheme, but his deposition testimony makes clear that he manufactured boxes for Walid Jamil to package Truvia. Deposition of Mario Ramirez, Bates No. 0013020. As with the Equal scheme, it is the jury's role to determine the weight to give to Mario Ramirez's involvement in the Truvia scheme. However, the Government has shown that Mario Ramirez was involved to some extent and that his actions are relevant to demonstrating his knowledge, intent, preparation, plan, and absence of mistake or accident in the 5-Hour ENERGY conspiracy. Therefore, the Court finds that the third factor is met as to Mario Ramirez.

### c. Monster Energy Drinks and Mars Candy Scheme

Joseph and Adriana Shayota do not dispute that they engaged in the Monster scheme. *See, e.g.*, Shayota Mot. at 2 ("Mr. & Mrs. Shayota engaged in diverting."). The Court therefore finds that the third factor is met.

### d. Welch's and Motts Products Scheme

Joseph and Adriana Shayota do not contest that they engaged in the Welch's and Motts scheme. *See, e.g.*, Shayota Mot. at 2 ("Mr. & Mrs. Shayota engaged in diverting."). The third factor is therefore met.

### e. Pillsbury Scheme

Walid Jamil explicitly admits, both in his motion to exclude and in his depositions, that he engaged in the Pillsbury scheme. *See* Walid Jamil Mot. at 8–9; Deposition of Walid Jamil, Bates Nos. 0021345–46. The third factor is therefore met.

### 4. Similarity to the Offense Charged

Finally, the fourth factor is whether the prior act is similar to the offense charged. Analyzing this factor is not always necessary; similarity is important in the Rule 404(b) analysis only "if similarity of the crimes is the basis for the relevance of the evidence" *United States v. Riggins*, 539 F.2d 682, 683 (9th Cir. 1976). Applying this principle, "[i]f the purpose of the

proffered evidence is to show that the defendant's prior criminal conduct provided him with opportunity, knowledge, preparation or motive, it may or may not be necessary that the prior conduct be similar to the offense charged. But when evidence is offered to prove identity, modus operandi, or absence of mistake or accident, the prior criminal conduct is relevant only if it is similar to the offense charged." *United States v. Bailleaux*, 685 F.2d 1105, 1110 (9th Cir. 1982). In this case, determining similarity to the offense charged is necessary for determining knowledge and absence of mistake or accident.

For the purposes of analyzing similarity to the offense charged, the alleged schemes fall into two groups. The first group, which consists of the Equal scheme and the Truvia scheme, involves the manufacture of counterfeit packaging. The second group, which consists of the Monster scheme, the Welch's and Motts scheme, and the Pillsbury scheme, does not.

### a. Equal and Truvia Schemes

The Equal and Truvia schemes are grouped together because in these schemes, Defendants not only sold international products in the United States, they also manufactured counterfeit packaging to repackage those products before resale. Deposition of Joseph Shayota, Bates Nos. 00192203–10; Deposition of Walid Jamil, Bates No. 0021564.

The Equal and Truvia schemes are similar to the 5-Hour ENERGY scheme, which began as a conspiracy in which Defendants repackaged genuine 5-Hour Energy liquid in counterfeit English-language packaging. ECF No. 169 at 6–7. However, unlike the 5-Hour ENERGY conspiracy, Defendants never counterfeited food products themselves in the Equal or Truvia schemes. Deposition of Joseph Shayota, Bates No. 0019203. Despite this difference, however, the schemes are sufficiently similar to show that Defendants were experienced in the business of selling food products outside the normal chain of distribution. Additionally, Defendants' behavior in the Equal and Truvia schemes tends to show that they were not mistaken about their roles and the roles of other Defendants in the 5-Hour ENERGY scheme, the scope of their authorization as distributors of 5-Hour ENERGY, and the nature of their actions. Even though the 5-Hour ENERGY scheme eventually went further than the Equal and Truvia schemes when Defendants

counterfeited the product itself, the schemes are similar enough to meet the last element of the analysis under Rule 404(b).

### b. Monster Scheme, Welch's and Motts Scheme, and Pillsbury Scheme

The Monster scheme, the Welch's and Motts scheme, and the Pillsbury scheme are grouped together because in these schemes, Defendants never counterfeited packaging. Notice at 3. Instead, Defendants only bought products intended for international sale and resold them in the United States. However, despite this difference, this second group of schemes was sufficiently similar to the 5-Hour ENERGY scheme to show that Defendants were experienced in the business of selling food products outside the normal chain of distribution. Defendants' alleged behavior in these schemes tends to show that they were not mistaken about their roles and the roles of other Defendants in the 5-Hour ENERGY scheme, the scope of their authorization as distributors of 5-Hour ENERGY, and the nature of their actions. The Court therefore finds that the fourth factor is met.

### 5. Rule 403 Balancing

The Court next considers whether the prior schemes evidence against Walid Jamil, Mario Ramirez, and Joseph and Adriana Shayota is admissible under the balancing test of Rule 403. *See Curtin*, 489 F.3d at 957 (holding that courts should conduct a Rule 403 balancing as part of the analysis under Rule 404(b)). Joseph and Adriana Shayota argue that the probative value of the evidence is substantially outweighed by its prejudicial effect because "if a person is unfamiliar with diverting, it would be easy for him/her to assume that such a practice is illegal or a bad act more generally." Shayota Mot. at 9.

The prejudicial effect of the Government's evidence is slight. Defendants claim that diversion is "not illegal," Shayota Mot. at 9, but instead is at most "a contractual violation," Walid Jamil Mot. at 9. However, as the Ninth Circuit has held, "if this scheme was indeed legitimate, [Defendants] cannot assert that it prejudiced the jury." *United States v. Melvin*, 91 F.3d 1218, 1222 (9th Cir. 1996). Moreover, if there is any risk of prejudice, Defendants may seek to minimize the risk by presenting evidence that diversion was a legitimate common business practice. Shayota

Mot. at 10; *see United States v. Singh*, 106 F. App'x 578 (holding that a defendant "minimized this risk [of prejudice] by suggesting to the jury that he was unaware that selling the pseudoephedrine was illegal").

On the other side of the scale, the probative value of the Government's proffered evidence is high. As discussed above, these prior schemes may lead a jury to believe that Defendants had planned and prepared for the 5-Hour ENERGY scheme, and engaged in the scheme knowingly, rather than through mistake or accident. Defendants' past history of working together on similar schemes indicates that they understood their roles as well as the objects of the conspiracy, and demonstrates how they gained knowledge, skills, and networks necessary to carry out the alleged 5-Hour ENERGY conspiracy.

Evidence of the prior schemes also will not result in undue delay, waste of time, or jury confusion that substantially outweighs the probative value of the evidence. The parties do not dispute the basic facts, so presentation of the facts should be fairly straightforward. The parties do disagree about the interpretation of the facts, and Defendants may seek to introduce evidence that diversion is a legitimate common business practice. However, Defendants would likely seek to introduce such evidence even if evidence of the prior schemes was excluded because Defendants' legitimate common business practice evidence appears to constitute the heart of Defendants' defense, i.e., that Defendants had no knowledge or intent to commit a crime. Therefore, the Court finds that the probative value of the prior schemes evidence substantially outweighs any unfair prejudice, undue delay, waste of time, jury confusion or any other factor under Rule 403.

The Court therefore DENIES Walid Jamil's, Mario Ramirez's, and Joseph and Adriana Shayota's motions to dismiss evidence of the five prior schemes on the basis of Rule 403 and Rule 404(b).

### G. Limiting Instruction

Although the Court denies all but Camilo Ramirez's motion to exclude evidence under Rule 404(b), the Court nevertheless finds that in admitting the evidence, a limiting instruction is appropriate. *See United States v. Minyard*, 461 F.2d 931, 934 (9th Cir. 1972) ("It is the general rule

that where evidence pertaining to another crime is introduced for the purpose of showing the general intent of defendant in committing the offense charged, the jury should be instructed as to the limited probative effect of the testimony admitted."); *see also Montgomery*, 150 F.3d at 1001 (holding that a district court's limiting instruction weighed in favor of affirming the court's admission of evidence under Rule 404(b)). The Court will instruct the jury that the Government's evidence of previous schemes should be considered only to the extent that they are probative of Defendants' knowledge, intent, preparation, plan, and absence of mistake or accident, and should not be considered for any other purpose.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Joseph and Adriana Shayota's Motion to Exclude the Admission of Rule 404(b) Evidence, ECF No. 220, DENIES Mario Ramirez's Motion to Exclude the 404(b) Evidence Noticed by the Government, ECF No. 218, DENIES Walid Jamil's Motion to Exclude Evidence Under Rule 404(b), ECF No. 216, and GRANTS Camilo Ramirez's Motion to Exclude Evidence Under Rule 404(b), ECF No. 213.

**IT IS SO ORDERED.**

Dated: October 4, 2016

_____
LUCY H. KOH
United States District Judge