UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH SHAYOTA and ADRIANA SHAYOTA,<br><br>Defendants. | Case No. 15-CR-00264-LHK<br><br>**ORDER DENYING DEFENDANT ADRIANA SHAYOTA'S MOTION TO SEVER** |
|---|---|

At approximately 1:00 p.m. on October 25, 2016, during cross-examination of the second trial witness, Defendant Adriana Shayota moved to sever her trial from the trial of her husband and co-defendant Joseph Shayota. In this motion, Adriana Shayota renewed the motion for severance in the alternative that she had raised on October 20, 2016, which argued that the Court should either redact certain deposition testimony that was admissible against Joseph Shayota but not against Adriana Shayota or, in the alternative, the Court should sever the trial.

The Court has already granted several severances in the instant case, in which eleven defendants were indicted. One of the defendants is a fugitive, and four others have pled guilty. Six defendants remain, and the Court will conduct three trials with two defendants per trial. The

1

Case No. 15-CR-00264-LHK
ORDER DENYING DEFENDANT ADRIANA SHAYOTA'S MOTION TO SEVER

history of severances in this case is as follows.

On March 23, 2016, Defendants Joseph Shayota and Kevin and Fadi Attiq filed motions to sever. ECF Nos. 117, 111. The motions sought to sever Defendants' trials from the trial of Walid Jamil. The basis of Joseph Shayota's motion was that the Government would "introduce at trial out-of-court confessions or admissions made by [Walid] Jamil in the form of deposition testimony from [certain] related civil proceedings." ECF No. 145 at 5. Such testimony, Joseph Shayota argued, would run afoul of the holding in *Bruton v. United States*, 391 U.S. 123 (1968). The Court found Joseph Shayota's motion to sever premature, as the Government had not yet indicated what deposition testimony it would offer at trial. *Id.* at 5–6. The Court therefore denied Joseph Shayota's motion to sever without prejudice.

The basis for Kevin and Fadi Attiq's motion to sever was that Walid Jamil had filed a declaration stating that Walid Jamil would offer exculpatory testimony as to Kevin and Fadi Attiq if Walid Jamil were tried separately from Kevin and Fadi Attiq. The Court granted Kevin and Fadi Attiq's motion to sever. *Id.* at 5. In reaching this conclusion, the Court noted that Kevin and Fadi Attiq "ha[d] made a reasonable showing that [co-Defendant] Walid Jamil would testify if severed," and that Walid Jamil would offer exculpatory testimony. *Id.* at 3. "In particular," Kevin and Fadi Attiq had "provided a declaration from Walid Jamil directly stating that he would testify on behalf of [Kevin and Fadi Attiq] if their case were to be severed, but that he would not wish to testify at a joint trial." *Id.* at 3–4.

On August 24, 2016, the Court held a status conference in which the Court ordered the parties to meet and confer regarding severance issues and file a Joint Severance Status Report. ECF No. 207 at 1–2. The parties filed their Joint Severance Status Report on August 26, 2016. ECF No. 208. In this report, the parties agreed to hold one joint trial for Joseph Shayota and Adriana Shayota and one joint trial for Kevin Attiq and Fadi Attiq. *Id.* at 1. The Government proposed a single trial for the remaining Defendants: Walid Jamil, Raid Jamil, Leslie Roman, Mario Ramirez, and Camilo Ramirez. *Id.* "All of the Defendants, except for Raid Jamil, Mario Ramirez[,] and Camilo Ramirez, stipulate and agree[d]" to this proposed trial grouping. *Id.* On

2

September 13, 2016, the Court granted a motion by Mario Ramirez and Camilo Ramirez to sever their trial from the trials of Walid Jamil, Raid Jamil, and Leslie Roman. ECF No. 238. At that time, the Court was prepared to hold the following four trials: (1) Joseph Shayota and Adriana Shayota, (2) Kevin Attiq and Fadi Attiq, (3) Mario Ramirez and Camilo Ramirez, and (4) Walid Jamil, Raid Jamil, and Leslie Roman. However, Walid Jamil, Raid Jamil, and Leslie Roman pled guilty. As a result, three trials of two defendants each remain.

Thus, on August 24, 2016, Joseph Shayota and Adriana Shayota agreed to be tried jointly. Since that time, Joseph Shayota and Adriana Shayota have in large part litigated the case together: they have filed joint motions, ECF No. 220, 270, 306, 307, 323, a joint administrative motion, ECF No. 353, joint responses, ECF No. 346, 265, joint objections, ECF No. 359, a joint witness list, ECF No. 253, joint exhibit lists, ECF Nos. 263, 354, 369, joint proposed jury instructions, ECF No. 260, a joint proposed verdict form, ECF No. 256, and joint proposed voir dire, ECF No. 254.

On October 19, 2016, the Court found that Walid Jamil's November 27, 2012 deposition was admissible against Joseph Shayota, but not against Adriana Shayota because Adriana Shayota did not receive notice of the November 27, 2012 deposition. ECF No. 331. On October 20, 2016, four days before trial was set to begin, Defendant Adriana Shayota moved to exclude from the joint trial certain portions of the November 27, 2012 deposition testimony of Walid Jamil or, in the alternative, to sever her trial from the trial of Joseph Shayota. ECF No. 336. Adriana Shayota objected to portions of Walid Jamil's deposition testimony that discussed a spreadsheet that Adriana Shayota had emailed to herself. *Id.* at 2. In these portions of Walid Jamil's deposition testimony, Walid Jamil provided explanations of the spreadsheet that incriminated Adriana Shayota. *Id.* Adriana Shayota argued that the portions of the deposition discussing the spreadsheet should be excluded because the deposition testimony itself connected the spreadsheet to Adriana Shayota, and the jury would also see an exhibit showing that Adriana Shayota had emailed the spreadsheet to herself. Therefore, Adriana Shayota argued that the jury might interpret the incriminatory explanations of the spreadsheet as evidence against Adriana Shayota, which would

3

Case No. 15-CR-00264-LHK
ORDER DENYING DEFENDANT ADRIANA SHAYOTA'S MOTION TO SEVER

be improper because the deposition testimony was not admissible against her. *Id.* Adriana Shayota identified large portions of the deposition transcripts, parts of which contained statements about the spreadsheet, and argued that these portions should be excluded in their entirety. In the alternative, Adriana Shayota moved to sever her trial from the trial of Joseph Shayota. *Id.*

On October 24, 2016, the Court granted in part and denied in part Adriana Shayota's motion to exclude portions of the deposition testimony. ECF No. 370. The Court excluded all portions of deposition testimony that discussed the spreadsheet, but denied Adriana Shayota's motion as to certain portions of the deposition that did not discuss the spreadsheet. *Id.* During trial on October 25, 2016, during the cross-examination of the second trial witness, Adriana Shayota renewed her motion to sever her trial from the trial of Joseph Shayota. Adriana Shayota argued that her October 20, 2016 motion stated that Adriana Shayota moved for severance if the Court admitted any portion of Walid Jamil's November 27, 2012 deposition testimony. This is incorrect. Adriana Shayota's October 20, 2016 motion did not object to the admission of *any* part of the November 27, 2012 deposition. Instead, the motion objected only to the admission of certain portions of the deposition testimony, portions that Adriana Shayota characterized as discussing the spreadsheet. *See* ECF No. 336 at 2 ("While Ms. Shayota acknowledges that redactions and a limiting instruction to other excerpts of the November 27, 2012 Jamil Testimony would be permissible in a joint trial of Adriana Shayota and Joseph Shayota, . . . the 4-page and 2-page excerpts setting forth Mr. Jamil's incriminating explanation of Ms. Shayota's spreadsheet cannot be presented to Ms. Shayota's jury.")

Under Federal Rule of Criminal Procedure 12(b)(3)(D), a motion to sever defendants "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." The only timely motion to sever that Adriana Shayota made was therefore her October 20, 2016 motion for severance in the alternative, and Adriana Shayota's October 25, 2016 motion was limited to reasserting the grounds raised in the earlier motion. In her timely October 20, 2016 motion, Adriana Shayota argued only that certain portions of Walid Jamil's November 27, 2012 deposition testimony should be excluded. To

4

the extent that Adriana Shayota's October 25, 2016 motion for severance sought to argue that severance was justified because of the admission of *any* part of Walid Jamil's November 27, 2012 deposition testimony, this motion is untimely. Adriana Shayota knew as early as August 19, 2016, when the Government gave notice of its intent to introduce the November 27, 2012 deposition transcript, and certainly by October 19, 2016, when the Court ruled that the deposition was admissible against Joseph Shayota, that some part of the November 27, 2012 deposition would be introduced in her joint trial. Thus, this ground for severance was "reasonably available" to Adriana Shayota before trial, and her motion to sever on this ground is untimely. FED. R. CRIM. P. 12(b)(3)(D). Therefore, in deciding the motion to sever, the Court is limited to considering the argument that Adriana Shayota raised in her October 20, 2016 motion: that the portions of Government Exhibit 71 and Government Exhibit 72 discussing the incriminatory spreadsheet should not be presented in her trial. ECF No. 336.

The Court has already granted Adriana Shayota's motion to exclude with regard to all of the portions of the November 27, 2012 deposition transcript containing statements about the spreadsheet. ECF No. 370. The Court denied Adriana Shayota's motion to exclude only as to two portions of the transcript because those portions did not mention the spreadsheet and therefore did not present a danger of prejudice to Adriana Shayota. *Id.* The portions that the Court declined to exclude are reproduced below:

> <u>Government Exhibit 71, Page 234 Line 18 to Page 235 Line 18</u>
> 18 Q. Do you know, how did you get the labels off of the
> 19 bottles?
> 20 A. We tried to remove it by razor, cut them, but it was
> 21 stuck, and then they used the hot water. They dumped
> 22 them in the hot water below the cap level and let it
> 23 sit there for a while. This was pretty intense labor,
> 24 intense to get these off to do, and not because of
> 25 5-Hour, the other ones are very easy to remove, the
> 2  only reason this was, like I said, they'd been all
> 3  over Mexico and different temperatures from 120
> 4  degrees, and they were around probably for a year,
> 5  year and a half because the issue that it had in it,
> 6  and I told them, you've only got a couple of months or

```
 7  three months shelf life on them, and that's when we
 8  went on the speaker for the rep from 5-Hour to return
 9  it because there's no shelf life, and then he said
10  listen, the Mexico laws and U.S. laws, the date in
11  Mexico, which I know the day in Mexico starts with
12  day, month, a year, and U.S. it starts month, day and
13  then a year; so we removed the dates, the Spanish, and
14  we put the English date.
15  Q. How did you remove the dates from the bottles?
16  A. Ink remover.
17  Q. Each bottle you removed it by hand?
18  A. As you can see from tremendous amount of labor.
```

<u>Government Exhibit 72 Page 243 Line 17 to Page 244 Line 8</u>
```
17                              I told you
18  earlier he funded $2 million, between the wires, the
19  products of Equal, the machinery, the 5-Hour Spanish
20  label, we'll come close to $2 million. I did not fund
21  one dollar for this project. It was all Joe's.
22  Shayota.
23  Q. So you go on a total of 750,000 from Leslie Roman - -
24  750,000 bottles from Leslie Roman, correct?
25  A. Correct.
 2  Q. And you paid him $510,000 for those bottles, correct?
 3  A. We needed $510,000 to do the 750. Keep in mind
 4  they're bottles. We have trays, we have corrugated,
 5  we have labels, combination of things.
 6  Q. So that was your cost of manufacture.
 7  A. It wasn't the whole cost but that's what I needed to
 8  get going to make the bottles, that's what he sent me.
```

These portions of the transcripts do not discuss the spreadsheet or Adriana Shayota. The first portion discusses how Walid Jamil and others removed the Spanish-language labels from the 5-Hour Energy bottles. The second portion discusses the bottles that Walid Jamil purchased from Leslie Roman. During her opening statement, Adriana Shayota stated that she had no involvement in or knowledge of a conspiracy to relabel or counterfeit 5-Hour Energy. Thus, evidence that such a conspiracy existed and that Walid Jamil and others relabeled and counterfeited 5-Hour Energy is not inconsistent with Adriana Shayota's defense. Additionally, as the Court has previously stated, in order to limit potential prejudice from the deposition transcripts, the parties may file a joint

6

Case No. 15-CR-00264-LHK
ORDER DENYING DEFENDANT ADRIANA SHAYOTA'S MOTION TO SEVER

statement proposing a limiting instruction informing the jury that the November 27, 2012 deposition transcript should be considered as evidence only against Joseph Shayota, not against Adriana Shayota. ECF No. 350.

A court has discretion to grant a severance if evidence that is admissible only against one defendant poses a serious risk of prejudice to a co-defendant. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993) ("[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant."). However, in most circumstances in which evidence is admissible against only one defendant, severance is not necessary because "less drastic measures, such as limiting instructions, . . . will suffice to cure any risk of prejudice." *Id.*; *see also United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980) ("The prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge.").

In this case, the Walid Jamil November 27, 2012 deposition excerpts to be introduced in the joint trial do not mention the spreadsheet. Moreover, a limiting instruction can instruct the jury to consider the Walid Jamil November 27, 2012 testimony solely against Joseph Shayota. In these circumstances, the Court finds that "the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants" and that Adriana Shayota will therefore not be prejudiced by being tried jointly with Joseph Shayota. *United States v. Douglass*, 780 F.2d 1472, 1479 (9th Cir. 1986).

As discussed earlier, the Court's inquiry is limited to whether the portions of the November 27, 2012 deposition testimony of Walid Jamil that the Court did not exclude are sufficiently prejudicial to justify severing the trials, because Adriana's motion to sever raised only this ground for severance. The Court finds that these small portions of testimony are not likely to prejudice Adriana Shayota's defense, and therefore the Court DENIES Adriana Shayota's motion

to sever.

**IT IS SO ORDERED.**

Dated: October 28, 2016

_____
LUCY H. KOH
United States District Judge

8
Case No. 15-CR-00264-LHK
ORDER DENYING DEFENDANT ADRIANA SHAYOTA'S MOTION TO SEVER