CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Lloyd.farnham @ usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 5:15-CR-00264 NW |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| JUAN ROMERO, | |
| Defendant. | |

### I.     INTRODUCTION

From approximately October 2011 through November 2012, Defendant Juan Romero participated in a conspiracy to manufacture, without license, permission, or authorization, 5-Hour Energy products, including mixing the liquid contents of the counterfeit bottles. Members of the conspiracy worked with others to counterfeit the trademarks and copyrights owned by Living Essentials, LLC, and placed false information about the ingredients, lot numbers, and expiration dates of the products. Romero acted as the "cook"—concocting a blend of ingredients to mimic the true 5-Hour Energy formulation and he sourced bottles and caps imprinted with 5-Hour Energy's "Running Man Logo," which he filled with the fake liquid. Romero then sent millions of bottles of fake 5-Hour Energy

to others involved in the conspiracy, who subsequently sold the product in the United States. In doing so, Romero conspired to commit criminal copyright infringement and introduction of misbranded food into interstate commerce. Romero has plead guilty to Counts Two and Three of the Indictment pursuant to a plea agreement governed by Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

Consistent with the plea agreement, and in light of Mr. Romero's age and health, lack of criminal history, agreement to pay restitution to victim Living Essentials LLC, and prompt acceptance of responsibility and entry of the plea following initial appearance, the government recommends a sentence of one year and one day in custody. Such a sentence is sufficient but not greater than necessary to achieve the sentencing purposes Congress articulated in 18 U.S.C. § 3553(a).

## II.   OFFENSE AND RELEVANT CONDUCT

The following summary of offense conduct is drawn primarily from the plea agreement entered in this case. ECF No. 803 at 3-7.

At times relevant to the conspiracy charged in Counts Two and Three, Romero was the owner and principal of Advanced Nutraceutical Manufacturing LLC and Nutrition Private Label, Inc. in San Diego, California, a manufacturer of made-to-order liquid products. In approximately February or March 2012, Leslie Roman contacted Romero and asked him to find a company to manufacture blank bottles and caps imprinted with the trademarked "Running Man" logo. Mr. Roman flew to Guadalajara, Mexico, and Roman and Romero visited Tecni Envases Plasticos. They ultimately hired Tecni Envases Plasticos to supply the blank bottles and another Mexican company called Tapas y Tapones to supply the caps imprinted with the trademarked "Running Man" logo.

Romero admits that during this time, he was aware that there was a high probability that an individual he eventually learned was Walid Jamil, who worked with Mr. Roman, was not authorized to manufacture 5-Hour Energy and Romero failed to take steps to verify his representations to Mr. Roman and Romero. Romero later specifically learned, prior to the end of the conspiracy, that Walid Jamil was not authorized to manufacture 5-Hour Energy or its labels, and still made further deals with Walid Jamil for counterfeit labels, bottles, and caps, as well as counterfeit 5-Hour Energy liquids.

During the course of the conspiracy, Romero personally did the following: received samples of Living Essentials' authentic bottles and caps from Mr. Roman, and an image of Living Essentials'

"Running Man" trademark, in order to copy them; placed orders for these bottles and caps imprinted with the trademarked "Running Man" logo from Tecni Envases Plasticos and Tapas y Tapones, respectively; reached out to Karlville, an equipment manufacturer, about purchasing equipment for the counterfeiting operation; personally devised the recipe for the counterfeit 5-hour Energy liquid and purchased the ingredients, attempting to copy the formula as closely as he could, using all the ingredients that appeared on Living Essentials' label, in almost the exact same order; personally mixed the counterfeit liquid in his facility in San Diego, California; provided samples of the liquid he made to Mr. Roman for his and other's approval; and once he received word of their approval, took orders from Mr. Roman.

Romero then fulfilled those orders for counterfeit 5-Hour Energy. In order to disguise the true nature of the product, he communicated with Mr. Roman using code words, including on purchase orders and invoices that referred to Romero's counterfeit 5-Hour Energy as "juice blend," "spices," and "Michelada X, B, and O," which referred to 5-Hour ENERGY flavors "extra," "berry," and "orange."

He manufactured millions of bottles of counterfeit 5-Hour Energy, including caps imprinted with the trademarked "Running Man" logo, that were shipped to a company he later came to know was named Midwest Wholesale Distributors ("Midwest"), a distribution center owned and operated by Walid Jamil, Raid Jamil, and Justin Shayota, where counterfeit labels and false lot and expiration numbers were placed on the bottles. According to Romero's records, he delivered 4,303,724 completed bottles of counterfeit 5-hour Energy to Midwest.

In undertaking the above-described conduct, he agreed with at least one other person to willfully infringe on the 5-hour Energy copyrighted work, which was owned by Living Essentials, the infringement was done for the purposes of commercial advantage and private financial gain, and the offense consisted of the reproduction or distribution, in a 180-day period, of at least 10 copies, of 1 or more copyrighted works, which had a total retail value of more than $2,500. He also delivered the counterfeit 5-Hour Energy bottles to Midwest and therefore introduced into interstate commerce a food that was adulterated and misbranded because, as a result of the conspiracy and the actions of Romero and co-conspirators, the counterfeit 5-Hour Energy ultimately had false lot numbers and expiration dates on the labeling. In delivering the 5-Hour Energy, he acted with the intent to defraud and mislead.

In the plea agreement, Romero agrees that the loss for the purposes of the Sentencing Guidelines is more than $250,000, but less than $550,000 and that the offense involved the manufacture of the infringing items within the meaning of the federal Copyright laws.

### III.  SENTENCING GUIDELINES CALCULATIONS AND RESTITUTION

The government agrees with U.S. Probation's calculation under the Sentencing Guidelines, which mirror the calculations in the plea agreement. *See* PSR at ¶¶ 4, 53-64 and Plea Agmt. ¶7.

The government agrees that Romero's Base Offense Level is 8 for Count Two— Conspiracy: Criminal Copyright Infringement (18 U.S.C. § 371: 17 U.S.C. § 506(a)(1)(A), 18 U.S.C. § 2319(b)(1)). PSR ¶ 54. The parties agree that the loss amount for the purposes of sentencing is more than $250,000, but less than $550,000. Accordingly, the government agrees that the 12-level increase pursuant to U.S.S.G. § 2B5.3(b)(1) – Loss determined by § 2B1.1(b)(1)(G) U.S.S.G. §2B1.1(b)(1)(F) – applies. *Id.* ¶ 55. The government agrees that the two-level adjustment under U.S.S.G. § 2B5.3(b)(3)(A) also applies. *Id.* ¶ 56. The Total Offense Level (Subtotal) is 22. Because the adjusted offense level for Count Three – Conspiracy: Introduction of Misbranded Food (18 U.S.C. § 371: 21 U.S.C. § 331(a) and 333(a)(1) is less than Count Two, the counts are grouped and the offense level for Count Two controls. *See* U.S.S.G. § 3D1.3(b); PSR at ¶ 53; and Plea Agmt. ¶7. Thus, the Total Offense Level remains at 22.

The government agrees that a three-level reduction for acceptance of responsibility applies pursuant to U.S.S.G. §§ 3E1.1. *Id.* ¶¶ 62-63. The government also agrees that given the absence of criminal history and Romero's minor role in the conspiracy, the respective two-level reduction under Zero-Point Offender (U.S.S.G. § 4C1.1(a)) and Minor Role (U.S.S.G. § 3B1.2(b)) also apply. *See* PSR at ¶¶ 58, 61 and Plea Agmt. ¶7. Thus, Defendant's Adjusted Offense Level is 15. *See* PSR at ¶ 64 and Plea Agmt. ¶7.

The government also agrees with Probation's finding that Defendant has no Criminal History Points, placing him in Criminal History Category I. PSR ¶¶ 65-68. A Total Offense Level of 15 with a Criminal History Category I yields an advisory sentencing range of 18-24 months. PSR ¶ 97.

Pursuant to the agreement of the parties, the defendant agrees that a reasonable and appropriate disposition of this case under the Sentencing Guidelines and 18 U.S.C. § 3553(a), and the sentence to which the parties have agreed is, as follows: for Count Two, a range of imprisonment between time

served and no more than one year plus one day; an order that criminal restitution in the amount of $555,801.32 shall be paid for the benefit of victim Living Essentials, LLC; fine to be determined by the Court; and on Count Three, a range of imprisonment not to exceed one year that shall run concurrent to any term of imprisonment imposed in Count Two, with remaining terms to be determined by the Court. The term of supervised release imposed on Counts Two and Three shall be decided by the Court.

### IV.    SECTION 3553(a) FACTORS

Despite his minor role, Romero was a not insignificant member of the conspiracy. Romero not only sourced the fake 5-Hour Energy bottles and caps but personally concocted and mixed the fake 5-Hour Energy product. As part of the conspiracy, and at the request of his co-conspirators, Romero produced millions of bottles of misbranded food that co-conspirators then introduced into interstate commerce in the United States. Romero has admitted that during the conspiracy he learned that this was not an authorized product, thereby knowing he was creating a counterfeit product. Knowing the illegality of his actions, he used code words with co-conspirators on paperwork and invoices.

Against the advisory guidelines range of 18-24 months, the government's recommendation of one year and one day imprisonment is a significant variance, but the government believes this sentence—the upper limit of the Rule 11(c)(1)(C) plea agreement—is the appropriate sentence in this case and for this defendant that balances the § 3553(a) factors.

Romero's conduct was serious. A custodial sentence is needed to afford specific and general deterrence. As described in the plea agreement and above, Romero participated in a sophisticated and far-reaching conspiracy with real-world consequences. As outlined in the letter submitted by counsel for the victim in this case, Living Essentials LLC, Romero participated in a "vast conspiracy to manufacture, distribute, and sell unsanitary and unsafe counterfeit bottles of its category-defining dietary supplement product 5-Hour ENERGY® to tens-of thousands of unsuspecting consumers throughout the United States." ECF No. 804. In fact, the federal district court judge overseeing the civil lawsuit against the defendants in that case, including Romero, found that because of "Romero's reckless disregard for public health and safety," an award of maximum statutory damages was appropriate, and awarded Living Essentials $10 million plus permanent injunctive relief. *See generally Innovation Ventures, LLC v Ultimate One Distrib. Corp.*, 176 F Supp 3d 137, 149- 150, 167-170 (E.D.N.Y. 2016);

ECF No. 804 at 4. In reaching this conclusion, the district court judge specifically observed the inherent danger of Romero's actions, noting that Romero "bottled counterfeit liquid using large plastic drums in an unsanitary, unregulated industrial warehouse. Even though, to date, no adverse effects are known to have been reported from consumption of the counterfeit product, a maximum award is nonetheless warranted to punish and deter such dangerous activity." *Id.* at 170.

18 U.S.C. § 3553(a) also requires the Court to consider the history and characteristics of the defendant. The government acknowledges that Defendant has no prior criminal history. The PSR identifies that Romero is 78 years old, has some health concerns, and has the support of his family. PSR ¶¶ 72-78.

Romero did not avail himself to the proceedings when they were initiated in 2015, and when Romero was arrested after traveling to Italy in 2024, the government had to seek his extradition. That said, once represented by counsel and he was brought to face the charges in this district, Romero promptly accepted responsibility and began the process of resolving the case, timely notifying the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. Romero also agreed to pay $555,801.32 in restitution for the benefit of victim Living Essentials, LLC.

Once the government's extradition request was granted, Romero was taken into custody by Italian authorities and held for 88 days until taken into custody by the United States Marshals; he has remained in continuous federal custody since. The defendant did not contest detention. Accordingly, as of the September 30, 2025 anticipated sentencing hearing, Romero will have been in custody approximately 188 days. PSR ¶ 5 (reflecting arrest in Italy on March 26, 2025 and transfer to federal custody on June 12, 2025 where he has remained since).

### V.    CONCLUSION

Balancing these factors, for the foregoing reasons, the United States respectfully requests that the Court impose a custodial sentence of one year and one day on Count Two, and a concurrent sentence of

//
//
//

one year on Count Three; restitution in the amount of $555,801.32 to victim Living Essentials, LLC; a fine to be determined by the Court; and a fine and term of supervised release as determined by the Court. Consistent with the plea agreement, the Court should dismiss Count One upon imposition of sentence.

DATED: September 23, 2025                     Respectfully submitted,

                                            CRAIG H. MISSAKIAN
                                            United States Attorney

                                                  /s/
                                            LLOYD FARNHAM
                                            Assistant United States Attorney